44 A.3d 1113

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
BUDDY RANDOLPH, DEFENDANT–APPELLANT.

Argued October 25, 2011—Decided June 18, 2012.

332

*Alyssa I. Aiello*, Assistant Deputy Public Defender, argued the cause for appellant (*Joseph E. Krakora*, Public Defender, attorney).

*Maria I. Guerrero,* Special Deputy Attorney General/Assistant Essex County Prosecutor, argued the cause for respondent (*Carolyn A. Murray,* Acting Essex County Prosecutor, attorney).

*Brian J. Uzdavinis,* Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (*Paula T. Dow,* Attorney General, attorney).

*Jeffrey S. Mandel* submitted a brief on behalf of amicus curiae Association of Criminal Defense Lawyers of New Jersey (*PinilisHalpern,* attorneys).

Justice LaVECCHIA delivered the opinion of the Court.

The issue in this appeal is whether defendant Buddy Randolph should have been permitted, at the remand for his resentencing, to present evidence of his post-sentencing rehabilitative efforts. The resentencing court declined to consider the evidence based on its perception of the limited nature of the remand.

We find that the language of the Appellate Division's remand order leaves room for ambiguity and that resolution of this dispute turns on a close examination of the exchanges during argument between the appellate panel and counsel. As defendant contends, those exchanges support that in reconsidering and justifying the maximum sentences and their consecutive imposition, the trial court was called on to conduct nothing less than a resentencing, which necessarily involves the reevaluation and reweighing of aggravating and mitigating factors. In the court's performance of that function, defendant should have been permitted to proffer evidence of his rehabilitative efforts between his initial sentencing and resentencing for the court's consideration. Although we express no view on its value, defendant claims that his putative rehabilitative evidence will demonstrate the "better" person presently standing before the court at the time of resentencing, not a no-longer-accurate version of him from the past.

We hold that defendant was entitled to present the evidence and to have it considered and thus are compelled to reverse and remand for resentencing. That said, we add that not all remand

orders for "reconsideration" will necessitate full resentencing proceedings, as the fact-driven nature of our analysis bears witness. This matter is in part a cautionary tale, as it underscores the importance of specificity in language when a remand for resentencing is ordered.

I.

This case involves five multiple-count Essex County indictments against defendant, each focusing on a separate weapons-related incident, and three of which included an assault. Although recitation of all charges lodged against defendant is not pivotal to an analysis of the essential issue, we include a brief summary of the facts to provide context for the sentences originally imposed by the sentencing court.

On May 7, 2000, defendant was found in possession of a handgun without a permit and hollow point bullets. The charges from that incident were set forth in Indictment No. 2000–09–2457.

On the evening of October 29, 2000, defendant shot Darrell Clark with a nine-millimeter handgun, for which he lacked a permit. Charges relating to that incident were set forth in Indictment No. 2001–02–707.

Shortly after the Darrell Clark shooting, on November 2, 2000, defendant was attempting to elude police, who were seeking to serve him with an arrest warrant, when he pointed a loaded gun at a Newark police officer. That incident resulted in the issuance of Indictment No. 2001–02–708. The firearm involved in that incident was illegal and defaced. Defendant later was charged by way of separate indictment, No. 2002–04–1231, with possession of a defaced handgun without a permit.

The last incident occurred the morning of February 26, 2002, when defendant was found in possession of another defaced and loaded handgun for which he did not have a permit. He used the firearm to shoot another victim, Saleem Coxson, multiple times.

The charges against defendant from that incident were set forth in Indictment No. 2002–05–2003.

Pursuant to a negotiated plea agreement, defendant pled guilty on September 11, 2002, to the following assault and weapons charges in exchange for the State's dismissal of the remaining counts from the five Essex County indictments. On Indictment 2001–02–707, defendant pled guilty to second-degree aggravated assault, *N.J.S.A.* 2C:12–1(b)(1) (Count 2), and third-degree unlawful possession of a weapon, *N.J.S.A.* 2C:39–5(b) (Count 3). On Indictment 2002–05–2003, defendant pled guilty to second-degree aggravated assault, *N.J.S.A.* 2C:12–1(b)(1) (Count 1), and third-degree unlawful possession of a weapon, *N.J.S.A.* 2C:39–5(b) (Count 2). On Indictment 2001–02–708, defendant pled guilty to third-degree aggravated assault, *N.J.S.A.* 2C:12–1(b)(5)(a) (Count 1), third-degree unlawful possession of a weapon, *N.J.S.A.* 2C:39–5(b) (Count 2), and fourth-degree possession of a defaced firearm, *N.J.S.A.* 2C:39–3(d) (Count 4). On Indictment 2000–09–2457, defendant pled guilty to third-degree unlawful possession of a weapon, *N.J.S.A.* 2C:39–5(b) (Count 1), and fourth-degree unlawful possession of hollow point bullets, *N.J.S.A.* 2C:39–3(f) (Count 2). On Indictment 2002–04–1231, defendant pled guilty to third-degree unlawful possession of a weapon, *N.J.S.A.* 2C:39–5(b) (Count 1), and fourth-degree possession of a defaced firearm, *N.J.S.A.* 2C:39–3(d) (Count 2).

Defendant was sentenced on October 18, 2002. At the time of that sentencing proceeding, he was twenty years old, had not completed high school, had a three-year-old daughter who was in the custody of his mother, and had a serious substance abuse problem for which he had never received treatment. Although defendant had no prior adult convictions, he had been arrested twelve times over a two-year period and had an extensive juvenile history that included seventeen separate delinquency complaints filed between February 1994 and April 2000. Furthermore, in addition to the Essex County indictments, the sentencing court

recognized that defendant had a pending six-count indictment in Hudson County.

When sentencing defendant, the court found that aggravating factors three, the risk defendant will reoffend, *N.J.S.A.* 2C:44–1(a)(3), and nine, the need to deter defendant and others, *N.J.S.A.* 2C:44–1(a)(9), applied, and that no mitigating factors were present. The aggravating factors were found to outweigh the mitigating factors, and to support the imposition of a term greater than the presumptive term for the applicable sentencing range on each count to which defendant pled. In sum, defendant's sentence comprised three consecutive maximum terms; all other counts were made to run concurrent. In the aggregate, defendant was sentenced to a twenty-year term of imprisonment, with an eight-and-one-half-year period of parole ineligibility, pursuant to the No Early Release Act (NERA), *N.J.S.A.* 2C:43–7.2, and the Graves Act, *N.J.S.A.* 2C:43–6(c).[1] Importantly, the trial court did not include on the record justification for imposing three consecutive maximum sentences.

Defendant appealed, and the matter was remanded for resentencing under *State v. Natale,* 184 *N.J.* 458, 878 *A.*2d 724 (2005). At the first remanded resentencing hearing, the trial court stated that the absence of a presumptive term in the weighing process did not affect the court's decision with respect to the ultimate sentence for defendant. The court amended the judgment of conviction to re-impose the same sentences as before.

Defendant then appealed his post-*Natale*-remand sentence, asserting that the imposition of three consecutive maximum sentences was improper. He maintained that *State v. Miller,* 108

---

[1] On Count 2 of Indictment 2001–02–707, second-degree aggravated assault, defendant received a ten-year sentence with eighty-five percent NERA parole ineligibility and forty months of parole ineligibility under the Graves Act; on Count 1 of Indictment 2000–09–2457, third-degree unlawful possession of a weapon, defendant received a five-year sentence; and, on Count 1 of Indictment 2002–04–1231, third-degree unlawful possession of a weapon, defendant received a five-year sentence.

*N.J.* 112, 527 *A.*2d 1362 (1987), and *State v. Pennington,* 154 *N.J.* 344, 712 *A.*2d 1133 (1998), discourage running maximum sentences consecutively in the ordinary course of sentencing. He also argued that because the sentencing court did not provide reasons for imposing three consecutive maximum sentences, his sentence should be remanded again for a reweighing of aggravating and mitigating factors to determine whether there was justification for three consecutive *maximum* terms.

The State, on the other hand, pointed to the sentence's consistency with the negotiated plea, adding that consecutive sentences were within the trial court's discretion because defendant's offenses involved separate wrongs against three different victims.

An excessive-sentence panel of the Appellate Division conducted oral argument in the matter on April 24, 2007, at which the panel asked:

> Isn't it clear from the case law that even where the sentence is the result of a plea negotiation the [c]ourt still has to justify the various elements of the sentence? The terms, the parole ineligibility, consecutiveness, and I think that [defense counsel] is correct the cases say that there needs to be some fairly special considerations when you're doing more than two consecutive terms. That's—all of that is correct. Correct?

After the State conceded the correctness of that legal principle, the panel noted, in further colloquy with the State, that despite the trial court's likely rationale for ordering consecutive terms, the reasons for the sentence needed to be clear and explicit on the record because there "needs to be some fairly special considerations" when ordering more than two consecutive terms. The State again agreed with the panel. The State then "consented" to a sentencing remand, but "only for the limited purpose of the trial court putting on the record the reasons for the consecutive purpose."

In a simply worded April 24, 2007, order, the Appellate Division stated: "We remand for reconsideration and justification for the sentence of three consecutive maximum terms."

The second resentencing proceeding occurred on December 17, 2009. Prior to the scheduled date, defendant filed a motion

requesting the court to consider evidence of his post-sentencing rehabilitative endeavors. Defendant's submission acknowledged his previous drug use and addressed his efforts to rehabilitate himself while in prison, including participation in a Narcotics Anonymous program, completion of a General Equivalency Diploma, and attendance at behavior modification and parenting classes. He argued that his crimes were a result of his drug dependence, that imprisonment would not help his drug addiction, and that he was never offered substance abuse help as a juvenile. Defendant asserted that even if the court did not find that the evidence supported the finding of a specific mitigating factor, it should take into account generally his mitigating post-sentencing rehabilitation efforts.

The sentencing court refused to consider the evidence, finding it beyond the scope of what the court was tasked with reconsidering by the remand order. With the findings made at the original sentencing and at the *Natale*-remand proceeding as its background, the court distilled the purpose to the second remand as follows:

> The issue here ... on the remand is for the specific findings of fact to justify the imposition of consecutive terms of sentencing. The imposition of those consecutive terms of sentencing were to effectuate an agreement reached between the parties. Whether or not those facts were present on the record requiring a remand is neither here nor there. We're here on a remand, and we'll make the findings.

Consistent with that view, the court made limited findings. It again found the presence of aggravating factors three and nine, *N.J.S.A.* 2C:44-1(a)(3) and (9). The court also reviewed the factors set forth in *State v. Yarbough,* 100 *N.J.* 627, 643–44, 498 *A.*2d 1239 (1985), *cert. denied,* 475 *U.S.* 1014, 106 *S.Ct.* 1193, 89 *L.Ed.*2d 308 (1986). It concluded that the "extreme[ly] extraordinary circumstances" of the case warranted the imposition of three consecutive terms.

Defendant appealed again, citing the trial court's denial of defendant's motion to hear post-sentencing rehabilitation evidence; however, the Appellate Division affirmed the sentence in a summary order filed October 19, 2010. We granted defendant's

petition for certification "limited to the issue of whether in resentencing defendant, the trial court erred in refusing to consider evidence of defendant's post-conviction rehabilitation." *State v. Randolph*, 210 *N.J.* 26, 40 *A.*3d 56 (2011). We also granted the motions for leave to participate as amicus curiae filed by the Attorney General of New Jersey and by the Association of Criminal Defense Lawyers of New Jersey.

## II.

Before this Court, defendant maintains that because the remand order specifically required the judge on remand "to reconsider and justify the *maximum*, as well as *consecutive*, aspects [of] the sentences," the judge was required to reevaluate the aggravating and mitigating factors. (Emphasis added). And, relying on *Miller, supra*, 108 *N.J.* at 122, 527 *A.*2d 1362, he contends that when a court considers imposing consecutive maximum sentences, additional guidelines apply, such as not relying on the same factors used to impose a maximum term also to justify making those maximum terms consecutive. He also argues that the overall fairness of the sentence must be considered. Specifically, defendant claims his post-sentencing rehabilitative efforts to better himself bear directly on his potential to reoffend and on the need to deter him from committing other crimes; he also argues that his efforts fit into a proper evaluation of the overall fairness of a sentence comprised of consecutive maximum terms.

Defendant generally points to both state [2] and federal [3] sentencing jurisprudence as supporting the notion that a court, when resentencing a defendant on remand, should consider rehabilitation efforts made by that defendant since his original sentencing. He distinguishes between the resentencing proceeding ordered in his case and situations in which a more limited type of hearing is

---

[2] *State v. Towey*, 244 *N.J.Super.* 582, 583 *A.*2d 352 (App.Div.), *certif. denied*, 122 *N.J.* 159, 584 *A.*2d 226 (1990).

[3] *Pepper v. United States*, —— *U.S.* ——, 131 *S.Ct.* 1229, 179 *L.Ed.*2d 196 (2011).

explicitly ordered, and asserts that courts have used the terms "resentencing" and "reconsideration" interchangeably, when, for example, ordering *Natale* remands. He also emphasizes this state's sentencing tradition of considering defendants as individuals, demonstrated in our case law and through the sentencing guidelines contained in *N.J.S.A.* 2C:44–1(a) and (b) and *N.J.S.A.* 2C:44–6(a), which he asserts evidence legislative support for that approach.

The State views post-sentencing rehabilitation evidence as proper grist for consideration only when resentencing is explicitly ordered, that is when the defendant's sentence has been vacated or set aside on appeal and a new sentencing proceeding is ordered. Because the remand in this case was for the limited purpose of considering whether the *original* sentence was in accord with accepted guidelines, and because the panel's order did not expressly vacate or set aside defendant's sentence, the State maintains that evidence of post-sentencing rehabilitation was not appropriate for consideration in defendant's remand proceeding. The State analogizes the remand in this case to the limited remand ordered in *Natale, supra,* where the trial court was instructed to base its determination on the original sentencing record and assess whether the absence of a presumptive term in the court's weighing process required imposition of a different sentence. 184 *N.J.* at 495–96, 878 *A.2d* 724. Finally, assuming arguendo that defendant's post-sentencing rehabilitation evidence was relevant on remand, the State addresses defendant's asserted evidence of rehabilitation and finds it lacking substantive merit for sentencing reduction purposes.

Two amici submitted opposing views on the subject of this appeal. The Attorney General, like the State, draws a distinction between 1) a remand for resentencing, resulting from a reversal or vacation of sentence, and 2) a more limited remand, for reconsideration and/or justification of an otherwise undisturbed sentence. The Attorney General essentially contends that in the latter type

of proceeding, only the information before the original court is relevant.

On the other hand, amicus Association of Criminal Defense Lawyers of New Jersey (ACDL) argues that the sentencing judge erred, in light of *State v. Towey*, 244 *N.J.Super.* 582, 583 *A*.2d 352 (App.Div.), *certif. denied*, 122 *N.J.* 159, 584 *A*.2d 226 (1990), in refusing to consider evidence of defendant's post-sentencing rehabilitation when reconsidering defendant's sentence. Citing as well *N.J.S.A.* 2C:44–1(d) and *State v. Soricelli*, 156 *N.J.* 525, 539, 722 *A*.2d 95 (1999), the ACDL contends that sentencing judges have discretion "when presented with extraordinary or exceptional post-conviction rehabilitative efforts" to take those efforts into account when considering, for example, whether a defendant may be sentenced one degree lower than the offense to which he or she pled guilty. *See N.J.S.A.* 2C:44–1(f)(2). And, judges also may consider post-conviction, but presentencing, rehabilitative efforts in support of mitigating factors eight, conduct is the result of circumstances unlikely to recur, *N.J.S.A.* 2C:44–1(b)(8); nine, defendant is unlikely to commit another offense, *N.J.S.A.* 2C:44–1(b)(9); and/or ten, defendant is particularly likely to respond to treatment, *N.J.S.A.* 2C:44–1(b)(10); or to negate aggravating factor three, the risk that defendant will commit another offense, *N.J.S.A.* 2C:44–1(a)(3).[4]

### III.

#### A.

Two key decisions provide some background to this appeal. One is the recent decision in *Pepper v. United States*, —— *U.S.*

---

[4] The ACDL further suggests that if this Court determines it necessary to create a threshold for admitting post-sentencing rehabilitation evidence that is based on the substance of that evidence, it should use the Third Circuit's standard. *See United States v. Sally*, 116 *F*.3d 76, 80 (3d Cir.1997) (admitting post-conviction rehabilitation evidence at resentencing when efforts are extraordinary or exceptional).

——, 131 *S.Ct.* 1229, 179 *L.Ed.*2d 196 (2011), in which the Supreme Court of the United States determined that an Eighth Circuit "ruling prohibiting the District Court from considering any evidence of [defendant] Pepper's postsentencing rehabilitation at resentencing conflicts with longstanding principles of federal sentencing law and contravenes Congress' directives in [18 *U.S.C.A.*] §§ 3661 and 3553(a)." *Id.* at ——, 131 *S.Ct.* at 1243, 179 *L.Ed.*2d at 215. Ultimately, the Supreme Court's determination in *Pepper* turned on federal sentencing statutory grounds, and the Court held that "when a defendant's sentence has been set aside on appeal, a district court at resentencing may consider evidence of the defendant's postsentencing rehabilitation and that such evidence may, in appropriate cases, support a downward variance from the now-advisory Federal Sentencing Guidelines range." *Id.* at ——, 131 *S.Ct.* at 1236, 179 *L.Ed.*2d at 208. However, the Supreme Court's analysis emphasized that "'possession of the fullest information possible concerning the defendant's life and characteristics'" is "'[h]ighly relevant—if not essential—to [the] selection of an appropriate sentence.'" *Id.* at ——, 131 *S.Ct.* at 1240, 179 *L.Ed.*2d at 212 (alterations in original) (quoting *Williams v. New York*, 337 *U.S.* 241, 247, 69 *S.Ct.* 1079, 1083, 93 *L.Ed.* 1337, 1342 (1949)). As the majority explained, "'[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.'" *Id.* at ——, 131 *S.Ct.* at 1239–40, 179 *L.Ed.*2d at 212 (quoting *Koon v. United States*, 518 *U.S.* 81, 113, 116 *S.Ct.* 2035, 2053, 135 *L.Ed.*2d 392, 422 (1996)). "Underlying this tradition" according to the Court, "is the principle that 'the punishment should fit the offender and not merely the crime.'" *Id.* at ——, 131 *S.Ct.* at 1240, 179 *L.Ed.*2d at 212 (quoting *Williams, supra,* 337 *U.S.* at 247, 69 *S.Ct.* at 1083, 93 *L.Ed.* at 1342). The tradition noted by the United States Supreme Court in the recent *Pepper* decision finds like traces in our own state, which leads to discussion of the second important background case.

In New Jersey, the seminal case dealing with post-sentencing rehabilitation is the Appellate Division decision in *State v. Towey,* 244 *N.J.Super.* 582, 583 *A.*2d 352 (App.Div.), *certif. denied,* 122 *N.J.* 159, 584 *A.*2d 226 (1990), which held that "when resentencing has been ordered," the trial court must consider "all current information" that is relevant to an appraisal of aggravating and mitigating factors, including evidence related to post-sentencing rehabilitation. *Id.* at 593–94, 583 *A.*2d 352 (citation and footnote omitted). The Appellate Division's expression of that requirement came as a result of our Court's previous remand of the defendant's originally imposed sentence. *See State v. Towey,* 114 *N.J.* 69, 552 *A.*2d 994 (1989). The following procedural background provides assistance in understanding that matter.

Ms. Towey had appealed her sentence for first-degree aggravated manslaughter, contending that the imposition of the maximum Graves Act parole disqualifier of five years was inconsistent with the imposition of the minimum base term sentence of ten years that the trial court ordered. *Id.* at 72–73, 552 *A.*2d 994. The Appellate Division initially affirmed the sentence after hearing the matter on a sentencing calendar; we granted certification and issued an opinion concluding that defendant's sentencing failed to reconcile the maximum period of parole ineligibility with the minimum base term sentence imposed. *Id.* at 73, 552 *A.*2d 994. Importantly, we remanded the matter to the Law Division "for resentencing." *Id.* at 86, 552 *A.*2d 994. In that remand, we indicated that the trial court had made two errors which impeded appellate review: its "abbreviated discussion of the aggravating and mitigating factors" did not comport with "the qualitative weighing process" contemplated by the New Jersey Code of Criminal Justice (Code); and its failure to explain adequately its imposition of a minimum base term with a maximum Graves Act sentence. *Id.* at 84, 552 *A.*2d 994.

At the resentencing proceeding, Towey maintained that she had made "a remarkable turnaround" during her two and one-half years in prison and submitted evidence of her rehabilitation,

including: a letter from a psychiatrist who treated her before her first sentencing and interviewed her prior to her second sentencing; documentation indicating that she had participated in a drug and alcohol program and founded a Narcotics Anonymous program at the prison; materials showing that defendant planned to pursue a career in addiction counseling after her release from prison and had taken coursework toward that objective; and evidence that she had counseled and educated others through her work at the prison. *Towey, supra,* 244 *N.J.Super.* at 588, 583 *A.*2d 352. The resentencing court viewed the relevant record differently and refused to consider anything that occurred after the first sentencing based on its belief that only the parole board could consider such information. *Id.* at 589, 583 *A.*2d 352. In pertinent part, the judge found that aggravating factor three, risk of recurrence, *N.J.S.A.* 2C:44–1(a)(3), applied based on the defendant's instability and the uncertainty that she would overcome her drug and alcohol problems, and refused to consider how defendant's rehabilitation efforts in prison might affect the risk of recurrence, *id.* at 592, 583 *A.*2d 352, notwithstanding the defendant's contention that her post-sentencing rehabilitation established mitigating factors eight and nine and negated aggravating factor three, *id.* at 593, 583 *A.*2d 352.

In the defendant's second appeal, the Appellate Division "agree[d] with defendant that when resentencing has been ordered, all current information relevant to an appropriate appraisal of the factors should be considered." *Id.* at 593–94, 583 *A.*2d 352 (citation and footnote omitted). In its oft-cited passage, it noted that "[w]ithout that information the resentencing process takes on a fictional component unwarranted by any reasonable analysis of its clear purpose. At sentencing, a defendant is entitled to be considered as a 'whole' person." *Id.* at 594, 583 *A.*2d 352 (citing *State v. Green,* 62 *N.J.* 547, 566, 303 *A.*2d 312 (1973)). Thus, the second *Towey* appellate panel, like the more recent *Pepper* majority, relied on a judicial tradition of individualized sentencing.

That said, two points to the *Towey* decision deserve further attention. First, the *Towey* appellate panel expressly drew a distinction between resentencing proceedings and more limited remand proceedings, just as did the *Pepper* majority. The panel drew a distinction between 1) evidence that may be considered in a resentencing proceeding and 2) "the material to be considered in determining whether the original sentence was in accord with [the] accepted guidelines. In that [latter situation], only the evidence before the sentencing judge is appropriate for consideration." *Id.* at 594 n. 2, 583 *A.*2d 352. Second, the panel agreed with the defendant that "all current information relevant to an appropriate appraisal of the factors should be considered" by the trial judge at resentencing. *Id.* at 593–94, 583 *A.*2d 352 (citation and footnote omitted). However, it disagreed with the import of the evidence she presented, and, in exercising its appellate authority to resentence her, rejected her contention that the rehabilitation evidence established mitigating factors or negated aggravating ones, thus setting a rather demanding standard for persuasiveness when considering post-rehabilitative evidence in the resentencing calculus. *See id.* at 594–95, 583 *A.*2d 352.

## B.

As in the federal system, trial judges in New Jersey once had broad discretion when imposing sentences, and relied heavily on the "whole person concept" in meting out punishment. *State v. Humphreys,* 89 *N.J.* 4, 14, 444 *A.*2d 569 (1982). In *Natale, supra,* Justice Albin, speaking for the Court, explained both the wide discretion traditionally wielded by sentencing judges and the Legislature's objective to structure that discretion and promote greater sentencing uniformity by establishing the Code:

For centuries, sentencing judges have "exercise[d] a wide discretion in the sources and types of evidence used to assist [them] in determining the kind and extent of punishment to be imposed within limits fixed by law." *Williams v. New York,* 337 *U.S.* 241, 246, 69 *S.Ct.* 1079, 1082, 93 *L.Ed.* 1337, 1341 (1949). Before sentencing, trial courts endeavor to have " 'the fullest information possible concerning the defendant's life and characteristics.' " *State v. Marzolf,* 79 *N.J.* 167, 176–77 [398 *A.*2d 849] (1979) (quoting *Williams, supra,* 337 *U.S.* at 247, 69 *S.Ct.* at 1083, 93

*L.Ed.* at 1342). The goal is to provide the sentencing judge with the "composite picture of the 'whole man.'" *State v. Green,* 62 *N.J.* 547, 566 [303 *A.*2d 312] (1973).

. . . .

"The dominant, if not paramount, goal of the Code is uniformity in sentencing." [*State v. Kromphold,* 162 *N.J.* 345, 352 [744 *A.*2d 640] (2000) ]. The Code was intended to replace "the unfettered sentencing discretion of prior law with a structured discretion designed to foster less arbitrary and more equal sentences." [*State v. Roth,* 95 *N.J.* 334, 345, 471 *A.*2d 370 (1984) ]; *see also State v. Dunbar,* 108 *N.J.* 80, 97 [527 *A.*2d 1346] (1987). Indeed, the Code's drafters " 'establishe[d] a general framework to guide judicial discretion in imposing sentences' " to ensure that similarly situated defendants did not receive dissimilar sentences. *State v. Hodge,* 95 *N.J.* 369, 374–75 [471 *A.*2d 389] (1984) (quoting *State v. Maguire,* 84 *N.J.* 508, 532 [423 *A.*2d 294] (1980)).

[184 *N.J.* at 472, 485, 878 *A.*2d 724.]

In channeling the discretion of sentencing judges, our Code, unlike the federal system, does not have a broadly worded provision like 18 *U.S.C.A.* § 3661, which mandates that "[n]o limitation" be placed on information heard at sentencing. However, the Legislature codified to a certain extent the traditional emphasis on individualized sentencing. The requirement that a presentence report be used in sentencing a defendant is an example. *See N.J.S.A.* 2C:44–6(a) ("The court shall not impose sentence without first ordering a presentence report investigation of the defendant and according due consideration to a written report of such investigation."). That report includes individualized information pertaining to a defendant's criminal, psychiatric, employment, personal, and family history. *N.J.S.A.* 2C:44–6(b). That said, *N.J.S.A.* 2C:1–2(b) specifically identifies the "general purposes" of the sentencing provisions of the Code, which reveal a tension between an individualized sentencing approach on the one hand and the reforms aimed at sentencing uniformity on the other:

b. The general purposes of the provisions governing the sentencing of offenders are:

(1) To prevent and condemn the commission of offenses;

(2) To promote the correction and rehabilitation of offenders;

(3) To insure the public safety by preventing the commission of offenses through the deterrent influence of sentences imposed and the confinement of offenders when required in the interest of public protection;

(4) To safeguard offenders against excessive, disproportionate or arbitrary punishment;

(5) To give fair warning of the nature of the sentences that may be imposed on conviction of an offense;

(6) To differentiate among offenders with a view to a just individualization in their treatment;

(7) To advance the use of generally accepted scientific methods and knowledge in sentencing offenders; and

(8) To promote restitution to victims.

[*N.J.S.A.* 2C:1–2 (b).]

Our decisions have been fairly described as having given less emphasis to (b)(2) and (b)(6), the "whole person" provisions, in favor of (b)(4) and (b)(5), which promote sentencing uniformity. *See* Cannel, *New Jersey Criminal Code Annotated,* comment 3 on *N.J.S.A.* 2C:1–2 (2011); *see, e.g., Roth, supra,* 95 *N.J.* at 355, 471 *A.*2d 370 (finding "the overall thrust" of Code's sentencing provisions is to "focus upon the gravity of the offense and not the blameworthiness of the offender"); *Yarbough, supra,* 100 *N.J.* at 630, 498 *A.*2d 1239 (stating that "sentencing courts should be guided by the Code's paramount sentencing goals that punishment fit the crime, not the criminal, and that there be a predictable degree of uniformity in sentencing"). The offense-oriented focus of the Code's sentencing principles was addressed squarely in *State v. Hodge,* 95 *N.J.* 369, 471 *A.*2d 389 (1984), where we considered a recent Code amendment creating a presumption of incarceration for crimes of a certain degree. *See L.* 1981, *c.* 290, § 40 (codified at *N.J.S.A.* 2C:44–1(d)).

In *Hodge,* the Court noted the trial court's use of pre-Code sentencing guidelines, commenting that the court's approach

balanced the defendant's capacity for rehabilitation with the other purposes of punishment, rather than following the offense-oriented analysis of the Code. The trial court tended to view the crime itself as only one factor among many to consider at sentencing, whereas the severity of the crime is now the single most important factor in the sentencing process.

[95 *N.J.* at 378–79, 471 *A.*2d 389.]

Because the standards of the Code were not applied, we were compelled in *Hodge* to set aside the sentence and to remand for further proceedings. *Id.* at 380, 471 *A.*2d 389. However, the door was left open for consideration of a wider array of information once the decision to impose incarceration had been made and the

focus shifted to the weighing of aggravating and mitigating factors and their impact on such matters as the range of sentence to be imposed and whether to downgrade or to impose parole ineligibility. *See id.* at 377, 471 A.2d 389.

Our analysis in *Natale, supra,* reinforces that once a judge determines that a term of imprisonment should be imposed, the judge has discretion but must sentence in accordance with the applicable statutes and must determine the length of the term by carefully analyzing and weighing aggravating and mitigating factors. 184 *N.J.* at 483–84, 878 A.2d 724. *Natale* demonstrates that the discretion the sentencing court wielded pre-Code survives to a more limited extent through the court's analysis of aggravating and mitigating factors set forth in *N.J.S.A* 2C:44–1, which allow for evaluation of a range of information unconstrained by evidential considerations. *Id.* at 486, 878 A.2d 724 (citing *State v. Davis,* 96 *N.J.* 611, 619–20, 477 A.2d 308 (1984) ("A sentencing judge may exercise a far-ranging discretion as to the sources and types of evidence used to assist him or her in determining the kind and extent of punishment to be imposed."); *Humphreys, supra,* 89 *N.J.* at 14, 444 A.2d 569 ("The whole person concept authorizes the sentencing court to comprehend in its deliberations a wide range of information that might otherwise be excluded by evidentiary norms.")).

■ In the performance of the sentencing function, *Rule* 3:21–4(g) provides that "[a]t the time sentence is imposed the judge shall state reasons for imposing such sentence including findings pursuant to the criteria for withholding or imposing imprisonment ... [and] the factual basis supporting a finding of particular aggravating or mitigating factors affecting sentence." Proper sentencing thus requires an explicit and full statement of aggravating and mitigating factors and how they are weighed and balanced. *See Natale, supra,* 184 *N.J.* at 488, 878 A.2d 724; *see also Towey, supra,* 114 *N.J.* at 84, 552 A.2d 994 (criticizing "abbreviated discussion of the aggravating and mitigating factors [as] not

reflect[ing] the qualitative weighing process contemplated by the Code").

In sum, the finding, weighing, and balancing of aggravating and mitigating factors involves marshaling information to assess the severity of sentence to impose for the crime that the defendant committed. Although many of the factors bear directly on the circumstances of the crime itself, a number of factors permit consideration of the defendant's individualized, personal circumstances. *See Hodge, supra,* 95 *N.J.* at 377–79, 471 *A.*2d 389. The "whole person concept" survives in limited form through the application of some aggravating and mitigating factors that, although relating to the crime, still invite consideration by the sentencing court of the individual defendant's unique character and qualities. Aggravating factors three, risk of another offense, *N.J.S.A.* 2C:44–1(a)(3), and nine, the need for deterring defendant and others, *N.J.S.A.* 2C:44–1(a)(9), and mitigating factors eight, circumstances unlikely to recur, *N.J.S.A.* 2C:44–1(b)(8), nine, the character and attitude of defendant, *N.J.S.A.* 2C:44–1(b)(9), and ten, defendant's likelihood to respond affirmatively to probationary treatment, *N.J.S.A.* 2C:44–1(b)(10), fall within that categorization. Defendant is entitled to that individualized consideration during sentencing. In a resentencing, a defendant similarly is entitled to the same full review and explanation of the finding and weighing of aggravating and mitigating factors. In the first remand in *Towey, supra,* our Court made clear that on remand for the defendant's *resentencing,* the resentencing court was expected to "qualitatively evaluate the aggravating and mitigating factors, explaining that evaluation on the record in sufficient detail to permit appellate review." 114 *N.J.* at 84, 552 *A.*2d 994.

The question presented here, and decided by the Appellate Division twenty years ago in *Towey,* is whether, in a remand for new sentencing proceedings after appeal, the judge, when finding, weighing, and balancing aggravating and mitigating factors, may consider the defendant as he stands before that court at the moment of resentencing or whether the trial judge must go back

to the time of the original sentencing and view the defendant from that vantage point. To a certain extent the answer depends on the scope of the remand.

## IV.

### A.

■ Remands for resentencing in New Jersey, as elsewhere, cover a range of proceedings, from vacated sentences which require sentencing anew to mere corrections of technical errors. In a recently minted observation, the First Circuit similarly noted the various types of resentencing:

> [r]esentencings are various in kind and many are very narrow. At one extreme, the resentencing ordered may be as unconstrained and open-ended as an initial sentencing; but at the other extreme, a remand may be so focused and limited that it involves merely a technical revision of the sentence dictated by the appeals court and calls for no formal proceeding—say, modifying the judgment to cut back to its legally permitted length a supervised release term that exceeded what the statute permits.
>
> [*United States v. Bryant,* 643 F.3d 28, 32 (1st Cir.2011).]

The question of whether a sentencing judge should consider evidence of post-sentencing rehabilitation thus is affected by the scope of the resentencing order in question.[5]

In *State v. Tavares,* 286 *N.J.Super.* 610, 616, 670 *A.2d* 61 (App.Div.1996), the Appellate Division indicated that a defendant must be sentenced "anew" where resentencing is ordered unless the remand is for correction of a technical error or the remand order is limited in scope. *Cf. Towey, supra,* 244 *N.J.Super.* at 594

---

[5] Under *Rule* 2:10–3, "Review of Sentence," "[i]f a judgment of conviction is reversed for error in or for excessiveness or leniency of the sentence, the appellate court may impose such sentence as should have been imposed or may remand the matter to the trial court for proper sentence." Generally speaking, an appellate court's judgment provides "the final directive of the appeals courts as to the matter appealed, setting out with specificity the court's determination that the action appealed from should be affirmed, reversed, remanded or modified." Jeffrey S. Mandel, *New Jersey Appellate Practice* § 28:2 at 568 (2012).

n. 2, 583 *A*.2d 352 ("[I]n determining whether the original sentence was in accord with the accepted guidelines . . . only the evidence before the sentencing judge is appropriate for consideration.").

In *Tavares, supra,* the defendant was sentenced to indeterminate consecutive terms. 286 *N.J.Super.* at 612–13, 670 *A*.2d 61. The Appellate Division vacated the indeterminate portion of the defendant's sentence, finding it illegal. *Id.* at 613, 670 *A*.2d 61. Additionally, although it did not find the imposition of consecutive terms to violate *Yarbough, supra,* it "caution[ed] the judge to explore the consequences of imposing two Avenel terms for a fixed number of years, to determine whether the result is in keeping with the judge's sentencing goals." *Ibid.* Unfortunately, the resentencing proceeding that ensued lacked detail. *See ibid.* The judge imposed two concurrent terms without any proceedings on the record, *ibid.,* which, on appeal again, the appellate panel found to be improper, *id.* at 616, 670 *A*.2d 61. The Appellate Division drew a distinction between abbreviated resentencing proceedings for the purpose of correcting technical errors, which it described as "ministerial act[s]," and other proceedings for resentencing or reconsideration:

> If we had directed a specific modification of the sentence or directed that the sentences be served concurrently, a mere "ministerial act" would have sufficed to amend the judgment. It is true, as suggested by the sentencing judge, that where we direct a specific modification to the sentence or judgment—such as ordering sentences to be served concurrently, directing merger or reducing the sentence to a specific term—the judge need only implement our judgment. No further proceedings would be required.
>
> However where, as here, we remanded for resentencing—or where we direct reconsideration without directing the imposition of a specific sentence, the sentencing proceedings must be conducted anew. The parties may again present their positions in light of our comments and any additional developments relating to the matter. Moreover, depending on the scope of the remand, the presentence report may be updated, or an institutional report obtained if defendant remained in custody, as the trial judge directs.
>
> [*Ibid.*]

Thus, except where the remand order is made limited in scope or is designed to correct a technical error, the Appellate Division has implied that a defendant should be assessed as he stands before the court at resentencing. That approach appears to have been

consistently applied in appellate opinions since the Appellate Division's pronouncement in *Towey*. *See, e.g., State v. Soricelli,* 302 *N.J.Super.* 193, 196, 695 *A.*2d 286 (App.Div.1997) (citing *Towey* for proposition that "[t]he sentencing court is permitted to consider the actual circumstances as of the date of a resentence, including what has occurred during the pendency of the appeal"), *rev'd on other grounds,* 156 *N.J.* 525, 722 *A.*2d 95 (1999).

Much commends the Appellate Division's approach. It encourages more fulsome resentencing proceedings unless circumscribed by the remanding appellate body's delineation that a limited proceeding is sufficient. Such an approach also encourages care on the part of the appellate tribunal to provide greater clarity when remanding.

Courts at times have been quite specific and careful in detailing the nature of a limited remand, even to the point of specifying through the resentencing order that the judge is required to return to the time of the original sentencing and review the sentence from that vantage point. *See, e.g., Natale, supra,* 184 *N.J.* at 495–96, 878 *A.*2d 724 (specifying that, on remand, trial court was to make its determination "based on the record at the prior sentencing" and was told to "not make new findings concerning ... aggravating and mitigating factors"). That said, cases like this will most often turn on their specifics. We turn therefore to the remand ordered in defendant's case.

### B.

In this matter, the remand called for reconsideration and justification of consecutive maximum sentences. The court did not explicitly vacate or set aside the sentence imposed; nor did it specifically limit the remand order to the original sentencing record as did this Court in *Natale.* However, defendant's sentence was remanded for reconsideration and for justification of both the consecutive nature of his sentences and the imposition of maximum terms, which are two separate considerations. The decision as to whether to impose multiple consecutive sentences

pursuant to *N.J.S.A.* 2C:44–5(a) requires analysis of specifically enumerated factors. *See Yarbough, supra,* 100 *N.J.* 627, 498 *A.2d* 1239. The decision to impose a maximum sentence concomitantly requires the finding and analysis of the aggravating and mitigating factors identified in *N.J.S.A.* 2C:44–1(a)–(b). *See, e.g., State v. Cassady,* 198 *N.J.* 165, 181–84, 966 *A.2d* 473 (2009). We take in turn those two separate analyses.

 *Yarbough* requires a sentencing court to perform the well-known assessment of specific criteria when determining whether consecutive sentences are warranted and "[w]hen a trial court fails to give proper reasons for imposing consecutive sentences at a single sentencing proceeding, ordinarily a remand [is] required for resentencing." *State v. Carey,* 168 *N.J.* 413, 424, 775 *A.2d* 495 (2001) (citing *Miller, supra,* 108 *N.J.* at 122, 527 *A.2d* 1362). In *Miller, supra,* 108 *N.J.* at 122, 527 *A.2d* 1362, we explained the reason for remanding such cases for resentencing:

> Because we do not have a separate statement of reasons for the trial court's decision to impose consecutive sentences, we are compelled to remand this case for resentencing. A statement of reasons is a necessary prerequisite for adequate appellate review of sentencing decisions. On this record, we cannot determine whether the trial court's imposition of consecutive sentences was a valid exercise of discretion.

Had the sentence in this case been remanded simply for a statement of reasons on the record for the imposition of consecutive sentences, as the State claims, evidence of defendant's post-sentencing rehabilitation would more likely be outside the scope of that remand order. Not only would such a remand be more technical in nature, that is, for the purpose of putting explanatory information on the record, but also the *Yarbough* analysis itself, which focuses primarily on the circumstances of the crimes committed, does not fairly implicate defendant's rehabilitation efforts.

However, the remand in this case was broadly worded and required the sentencing court to reconsider, and justify, the imposition of three consecutive *maximum* terms.[6] The remand

---

[6] In the specific context of these proceedings, we do not view the remand order's language to be narrowly circumscribed, as the dissent maintains. Defen-

order was not only for the reconsideration and justification of the consecutive nature of the sentences, but also for the same reconsideration and justification for the imposition of maximum terms, which necessarily requires a new analysis of the aggravating and mitigating factors. In such circumstances, the sentencing court should resentence defendant as he appears on the day of resentencing. Further, we adhere to the cautioning in *Miller* and *Pennington* against the imposition of multiple consecutive maximum sentences unless circumstances justifying such an extraordinary overall sentence are fully explicated on the record. That too calls for an up-to-date viewing of defendant at the time of resentencing.

 In conclusion, when "reconsideration" of sentence or "resentencing" is ordered after appeal, the trial court should view defendant as he stands before the court on that day unless the remand order specifies a different and more limited resentencing proceeding such as correction of a plainly technical error or a directive to the judge to view the particular sentencing issue from the vantage point of the original sentencing. Furthermore, as noted *supra, Towey* has set a demanding standard with respect to the persuasiveness of such evidence. In this matter, a close reading of the exchange between counsel and the appellate panel leaves the distinct impression that no limitation on reconsideration and justification of consecutive maximum sentences was intended. We will not infer such a limitation in these circumstances and we take none as satisfactorily explained as a result of the Appellate Division's affirmance of defendant's sentence following his most recent appearance before the Excessive Sentencing Oral Argument panel. We are compelled on this record to reverse and to

---

dant was arguing for a reweighing of the aggravating and mitigating factors to demonstrate a justification for more than two consecutive maximum sentences. If the Appellate Division had agreed with the State's attempt to limit the remand proceedings through its "consent" to putting on the record the reasons for consecutive sentences, then the panel would have fashioned a more narrowly worded order to express that intent.

remand for resentencing where defendant shall be permitted to proffer evidence of his post-conviction rehabilitative efforts. We express no view on its merits.

## V.

The matter is reversed and remanded for resentencing proceedings in accordance with this opinion.

Justice PATTERSON, dissenting.

The majority holds that defendant Buddy Randolph should have been permitted to present rehabilitation evidence to the trial court following the Appellate Division's remand. Its decision is premised upon a broad construction of the Appellate Division's order directing the trial court to conduct a new sentencing proceeding. The majority concludes that the Appellate Division intended that the trial court conduct an unlimited resentencing on remand, and that defendant consequently was entitled to offer evidence of his post-conviction rehabilitation at his resentencing hearing.

I agree with the majority that the introduction of post-conviction rehabilitation evidence is permissible when a sentence is vacated or an appellate court orders a remand that is unlimited in scope. I also agree with the majority's observation that when an appellate court orders a limited remand for resentencing, that remand should be conducted on the record that was before the trial court when it conducted the original sentencing.

My difference with the majority concerns the application of those principles to this case. I do not interpret the Appellate Division's remand order as expansively as it is construed by the majority. Based on the procedural setting of the remand, the colloquy between the court and counsel during oral argument of defendant's appeal, the language of the Appellate Division's remand order and another Appellate Division panel's subsequent affirmance of the trial court's resentencing, I conclude that the panel directed a remand limited in purpose and scope. That remand was intended to ensure the trial court's compliance with

two of this Court's decisions guiding sentencing courts considering consecutive sentences pursuant to *N.J.S.A.* 2C:44–5(a): *State v. Yarbough,* 100 *N.J.* 627, 643–44, 498 *A.2d* 1239 (1985), *cert. denied,* 475 *U.S.* 1014, 106 *S.Ct.* 1193, 89 *L.Ed.*2d 308 (1986), which sets forth the standard for determining whether sentences shall run concurrently or consecutively, and *State v. Miller,* 108 *N.J.* 112, 122, 527 *A.2d* 1362 (1987), which provides guidelines for the imposition of two or more consecutive sentences, each of which represents the maximum term for the offense committed by the defendant.

Accordingly, I agree with the holdings of the trial court and the Appellate Division that defendant was not entitled to present evidence of post-conviction rehabilitation to the trial court at the time of his resentencing, and I respectfully dissent.

## I.

The Appellate Division entered the order of remand at the center of this case in a familiar legal framework, applying the deferential standard of review that governs the sentencing determinations of trial courts. Even if an appellate court would have arrived at a different result, it must affirm a sentence " 'as long as the trial court properly identifies and balances aggravating and mitigating factors that are supported by competent credible evidence in the record. Assuming the trial court follows the sentencing guidelines, the one exception to that obligation occurs when a sentence shocks the judicial conscience.' " *State v. Cassady,* 198 *N.J.* 165, 180, 966 *A.2d* 473 (2009) (quoting *State v. O'Donnell,* 117 *N.J.* 210, 215–16, 564 *A.2d* 1202 (1989)).

New Jersey's sentencing scheme "envisages an important function for appellate courts in clarifying relevant standards, promoting consistent interpretation of sentencing guidelines, and enhancing uniformity in the application of statutory standards to similar facts under similar circumstances." *State v. Jarbath,* 114 *N.J.* 394, 400–01, 555 *A.2d* 559 (1989). In *State v. Roth,* 95 *N.J.* 334,

364–65, 471 *A*.2d 370 (1984), this Court defined three distinct appellate functions in sentencing review:

> [The appellate court] can (a) review sentences to determine if the legislative policies, here the sentencing guidelines, were violated; (b) review the aggravating and mitigating factors to determine whether those factors were based upon competent and credible evidence in the record; (c) determine whether, even though the court sentenced in accordance with the guidelines, nevertheless the application of the guidelines to the facts of this case makes the sentence clearly unreasonable so as to shock the judicial conscience.

When appellate review results in a reversal, *Rule* 2:10–3 authorizes the reviewing court to impose a corrected sentence as an exercise of original jurisdiction under *Rule* 2:10–5, or to "remand the matter to the trial court for proper sentence."

As the majority indicates, appellate orders remanding to the trial court for resentencing may be expansively phrased or precisely tailored to correct a given defect in the sentence. Appellate courts intending to set aside an illegal sentence typically convey that intent with an order expressly vacating the sentence or using similarly broad language. *See, e.g., State v. Lawless,* 423 *N.J.Super.* 293, 298, 32 *A*.3d 562 (App.Div.2011), *leave to appeal granted,* 209 *N.J.* 230, 36 *A*.3d 1062 (2012); *State v. Pennington,* 418 *N.J.Super.* 548, 550, 14 *A*.3d 790 (App.Div.2011), *certif. denied,* 209 *N.J.* 595, 39 *A*.3d 199 (2012); *State v. Tindell,* 417 *N.J.Super.* 530, 572, 10 *A*.3d 1203 (App.Div.2011); *State v. Felsen,* 383 *N.J.Super.* 154, 164–65, 890 *A*.2d 1029 (App.Div.2006).

Other remand orders are more limited in scope. An appellate court may remand a case to the trial court for resentencing because of specific concerns, such as the trial court's failure to specifically set forth the factual basis for its determination under a statutory standard. *See, e.g., State v. Thoms,* 191 *N.J.* 313, 313, 923 *A*.2d 228 (2007) (remanding to trial court to place on record its factual basis for imposing consecutive sentences); *Miller, supra,* 108 *N.J.* at 122, 527 *A*.2d 1362 (same). Such a limited remand may be appropriate when an appellate court questions a sentencing court's application of *N.J.S.A.* 2C:44–5(a). The statute affords to trial courts discretion to determine whether multiple sentences shall run concurrently or consecutively, but requires the sentenc-

ing court to undertake a careful weighing of factors identified in *Yarbough, supra,* 100 *N.J.* at 643–44, 498 *A.*2d 1239.[1] Similarly, before imposing consecutive sentences that represent the maximum term for the defendant's offenses, the sentencing court must undertake the analysis required by *Miller, supra,* 108 *N.J.* at 122, 527 *A.*2d 1362. *See, e.g., State v. Abdullah,* 184 *N.J.* 497, 514–15, 878 *A.*2d 746 (2005) (requiring trial court to indicate on record its rationale in imposing consecutive maximum sentences in accordance with *Miller, supra,* 108 *N.J.* at 122, 527 *A.*2d 1362).

When a sentencing court fails to consider *Yarbough* or *Miller,* or its rationale for imposing consecutive sentences cannot be discerned on appeal, an appellate court may remand for resentencing so that "the record is clear enough to avoid doubt as to the facts and principles the court considered and how it meant to apply them." *State v. Dashawn Miller,* 205 *N.J.* 109, 130, 13 *A.*3d 873 (2011); *see also Thoms, supra,* 191 *N.J.* at 313, 923 *A.*2d 228; *Abdullah, supra,* 184 *N.J.* at 514–15, 878 *A.*2d 746; *Miller, supra,* 108 *N.J.* at 122, 527 *A.*2d 1362; *State v. Hannigan,* 408 *N.J.Super.* 388, 400, 975 *A.*2d 466 (App.Div.2009). As the Court noted, such a remand is appropriate when the appellate court "cannot sufficiently discern the trial court's reasoning," but the appellate court should not suggest the result of the sentencing court's *Yarbough* analysis, because "the decision to impose consecutive or concurrent sentences rests in the first instance with the trial court." *Dashawn Miller, supra,* 205 *N.J.* at 130, 13 *A.*3d 873.

As the majority holds, the scope of the remand order determines the admissibility of rehabilitation evidence in the resentencing that follows. *Ante* at 350, 44 *A.*3d at 1125–26. The majority

---

[1] The criteria include: "(a) the crimes and their objectives were predominantly independent of each other; (b) the crimes involved separate acts of violence or threats of violence; (c) the crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior; (d) any of the crimes involved multiple victims; (e) the convictions for which the sentences are to be imposed are numerous." *Yarbough, supra,* 100 *N.J.* at 644, 498 *A.*2d 1239.

adopts the principles articulated by the Appellate Division in *State v. Towey,* 244 *N.J.Super.* 582, 595, 583 *A.*2d 352 (App.Div.1990). In *Towey,* the Appellate Division held that there was an important distinction between the information to be considered in the setting of that case—in which the Appellate Division vacated the trial court's sentence—and "the material to be considered in determining whether the original sentence was in accord with accepted guidelines." *Id.* at 594 n.2, 583 *A.*2d 352. In the latter case, "only the evidence before the sentencing judge is appropriate for consideration." *Ibid.*

This cautious approach to the admission of post-conviction rehabilitation evidence following a limited remand is consistent with the Legislature's " 'dominant, if not paramount, goal' " in enacting the New Jersey Code of Criminal Justice: the promotion of uniformity in sentencing. *State v. Natale,* 184 *N.J.* 458, 485, 878 *A.*2d 724 (2005) (quoting *State v. Kromphold,* 162 *N.J.* 345, 352, 744 *A.*2d 640 (2000)). Although several of the aggravating and mitigating factors identified in *N.J.S.A.* 2C:44–1(a) and (b) focus on the defendant as an individual, "the sentence imposed must reflect the Legislature's intention to focus on the degree of the crime itself as opposed to other factors personal to the defendant." *State v. Hodge,* 95 *N.J.* 369, 377, 471 *A.*2d 389 (1984); *see also State v. Hartye,* 105 *N.J.* 411, 418, 522 *A.*2d 418 (1987); *Lawless, supra,* 423 *N.J.Super.* at 298, 32 *A.*3d 562; *State v. Mosch,* 214 *N.J.Super.* 457, 462, 519 *A.*2d 937 (App.Div.1986), *certif. denied,* 107 *N.J.* 131, 526 *A.*2d 197 (1987). The aggravating and mitigating factors "do not have equivalent value. The qualitative assessment must always have the severity of the crime as its principal consideration." *Towey, supra,* 244 *N.J.Super.* at 595, 583 *A.*2d 352 (citing *Hodge, supra,* 95 *N.J.* at 377–79, 471 *A.*2d 389; *State v. Gerstofer,* 191 *N.J.Super.* 542, 546–47, 468 *A.*2d 436 (App.Div. 1983), *certif. denied,* 96 *N.J.* 310, 475 *A.*2d 599 (1984)).

Accordingly, limiting evidence of post-conviction rehabilitation evidence to cases in which the appellate court vacates an illegal sentence, or orders a general remand for resentencing, furthers

the Legislature's purpose when it enacted its sweeping reform of New Jersey's sentencing law.

## II.

Given these legal principles, the scope of the Appellate Division's remand in this case is central to the inquiry, and the history of defendant's sentencing proceedings is critical.

During defendant's original sentencing hearing, on October 18, 2002, the trial court imposed three consecutive sentences totaling twenty years of imprisonment with eight and one-half years' parole ineligibility. The sentencing judge commented that the imposition of consecutive sentences "realizes the goal," to which defense counsel agreed, but the judge made no findings under *Yarbough*. Although each of the consecutive sentences imposed represented the maximum term available for the offense, the sentencing judge similarly did not undertake the analysis required by *Miller, supra,* 108 *N.J.* at 122, 527 *A.*2d 1362. After the Appellate Division remanded the case for resentencing pursuant to *Natale,* a different sentencing judge imposed the same sentence as the defendant's original sentence in an amended judgment of conviction, but the record again lacked an analysis of the *Yarbough* factors or the *Miller* standard. Thus, the consecutive sentences which prompted this appeal were given by the original sentencing judge without the findings compelled by *N.J.S.A.* 2C:44-5(a) and our case law.

In defendant's second appeal, considered by an Excessive Sentencing Oral Argument panel of the Appellate Division on April 24, 2007, defense counsel requested a remand to address the consecutive sentences. Defense counsel told the Appellate Division panel that the appeal was premised on the argument that the trial court had imposed three consecutive sentences, each representing the maximum penalty in the statutory range, without appropriate findings as required by *N.J.S.A.* 2C:44-5(a) and the case law:

[DEFENSE COUNSEL]: Basically, Your Honors, my main challenge is to the consecutive nature of the sentences. Mr. Randolph received an aggregate 20 year

term with an eight and a half year parole bar. I think the notice of appeal is incorrect, by the way. I think it says ten, it should say 20. Just an oversight, I guess.

Basically the Judge got to that number by running three separate indictments together. The aggravated assaults is one consecutive to a gun charge, consecutive to a gun charge. And I would just point out that there were no reasons given for running three consecutive sentences. Each of them is a maximum. And *Miller* and *Pennington* all say that ordinarily you shouldn't run that many together, or if you do they shouldn't be maxed out every count. And even if you do that there has to be some justification. No justification—

After a brief colloquy with the panel to clarify the sentence imposed for each count of the indictment, defense counsel continued to press for a remand for the sentencing court to provide the "justification" required by the case law:

[DEFENSE COUNSEL]: It's three separate indictments or three separate events run consecutive. And the only justification really given for three consecutive sentences [is] on sentencing transcript on Page 25 the Judge says well, stop there because that realizes the goal, right? So in essence the Judge was just trying to add up numbers to get to 20. And I would just suggest that that's not what the code says he's supposed to do. It's not what *Miller* or *Pennington, Yarbough,* all the consecutive sentencing cases say you're supposed to do. He is only 20. These were his first indictable convictions although obviously he has a pretty atrocious juvenile record.

He's been a drug addict since he was about 12 years old. So I think given all those circumstances, given the lack of reasoning there should at least be a remand for the Judge to determine whether or not the aggravating factors justify three consecutive maximum terms.

Thus, defense counsel clearly requested that the Appellate Division remand to the sentencing court for a limited purpose: an analysis of the imposition of consecutive sentences, each representing a maximum term, under *Yarbough* and *Miller*. The panel's anticipation of a limited remand was underscored in the same hearing by a colloquy between a member of the panel and the prosecutor:

[THE COURT]: Isn't it clear from the case law that even where the sentence is the result of a plea negotiation the Court still has to justify the various elements of the sentence? The terms, the parole ineligibility, consecutiveness, and I think that [defense counsel] is correct the cases say that there needs to be some fairly special considerations when you're doing more than two consecutive terms. That's—all of that is correct. Correct?

[THE PROSECUTOR]: Well, Your Honors, with regard to the consecutive terms it is clear from the record that these are all separate acts involving three other

cases involving three separate victims. So the Court could affirm the consecutive sentence in its discretion when it is very clear. However, if—

[THE COURT]: But it needs to make it clear on the record, doesn't it?

[THE PROSECUTOR]: Okay. If the Court feels that these should be remanded the state will concede only for the limited purpose of the trial court putting on the record the reasons for the consecutive purpose.

[THE COURT]: Okay. Thank you.

[THE PROSECUTOR]: Nothing further, Your Honor. Thank you.

[THE COURT]: The matter will [b]e remanded for reconsideration and justification of three consecutive maximum terms.

The limited purpose of the remand was confirmed by the language of the panel's written order: "[w]e remand for reconsideration and justification for the sentence of three consecutive maximum terms." [2]

It is, in my view, abundantly clear that the Appellate Division's remand to the sentencing court was intended to serve a limited purpose: to prompt the trial court to undertake the analysis required by statutory and case law with respect to its imposition of consecutive sentences. This limited remand was requested by defendant, consented to by the State and reflected in the oral and written orders of the Appellate Division panel. Nothing in the record suggests that the Appellate Division intended to vacate the sentence or remand for a comprehensive resentencing; indeed, it included the term "justification" in the remand order to direct the trial court to set forth the basis for its sentence. In the language of *Towey*, cited with approval by the majority, the remand at issue here was for a determination "whether the original sentence was in accord with accepted guidelines." *Towey, supra,* 244 *N.J.Super.* at 594 n.2, 583 *A.2d* 352. Accordingly, the sentencing court relied only on the evidence that had been before the trial judge when he conducted defendant's sentencing, and did not consider post-conviction rehabilitation evidence offered by defendant. *See*

---

[2] In an apparent drafting error, the Appellate Division's order cited *State v. Pierce,* 188 *N.J.* 155, 902 *A.2d* 1195 (2006). *Pierce* addresses the standard of *N.J.S.A.* 2C:44–3(a) for sentencing under the persistent offender statute, and is irrelevant to this case.

*ibid.* The limited scope of the Appellate Division's remand order was further confirmed by a second panel's October 18, 2010 affirmance of the trial court's sentence. Given the parameters of the remand, the trial court's limitation of the evidence on resentencing was, in my view, correct.

Accordingly, I would affirm, and I respectfully dissent.

*For reversal and remandment*—Chief Justice RABNER and Justices LaVECCHIA, ALBIN and HOENS—4.

*For affirmance*—Justices PATTERSON and WEFING (temporarily assigned)—2.