**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1042-23

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ROBERT D. KEITH, a/k/a
DAVID R. KEITH,

     Defendant-Appellant.

_____

Submitted March 5, 2025 – Decided May 21, 2025

Before Judges Jacobs and Jablonski.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 17-12-1387.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Susan Brody, Designated Counsel, on the brief).

Yolanda Ciccone, Middlesex County Prosecutor, attorney for respondent (Hudson E. Knight, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant appeals from the denial of his petition for post-conviction relief ("PCR") and the denial of his request to disqualify the trial judge from those proceedings. After considering the record, the parties' contentions, and the governing principles of law, we affirm.

I.

As the bookkeeper of a small business in South Plainfield, defendant was accused of writing unauthorized checks on his employer's business accounts and using company credit cards without permission. A Middlesex County grand jury returned a twenty-count indictment accusing him of several financial offenses ranging from first to fourth degree crimes. Defendant pled guilty to one count of first-degree financial facilitation, 2C:21-25(a) ("the money laundering statute") and one count of third-degree insurance fraud, N.J.S.A. 2C:21-4.6(a).

In exchange for defendant's guilty plea, the State recommended a ten-year prison term with a four-year parole disqualifier on the money laundering count to be served consecutively to a four-year prison term for the insurance fraud offense. The remaining counts of the indictment were to be dismissed at sentencing. Defendant also agreed to forfeit all illegally obtained property and to pay restitution.

A-1042-23

Defendant provided this factual basis to substantiate his guilty plea to the money laundering count:

> Q: Sir, between February 1st of 2015 when you started working for RupCoe (phonetic) Heating and Plumbing and February 7, 2017, were you working for RupCoe Plumbing and Heating in the Borough of South Plainfield?
>
> A: Yes.
>
> Q: Okay. And what were you doing for them?
>
> A: I was contracted to – to contract to serve their accounting and bookkeeping needs.
>
>     . . . .
>
> Q: Okay. And during that time, did you get credit cards in their name and start using several of their credit cards without their authorization?
>
> A: Yes.
>
> Q: Okay. And did you also write some checks to yourself?
>
> A: Yes.
>
> Q: Okay. And do you agree that the amount of those checks and those credit card charges that you weren't authorized to do, exceeded over $500,000?
>
> A: Yes.

3

Q:   And specifically, with these illegal funds did you at one point put into a PayPal account of [a another person] about $5,000?

A:   I'm not sure of the amount but yes, I did put in her PayPal.

Q:   Okay.  And why did you pay her that money?

A:   She duplicated the statements.

Q:   And what was the purpose of her duplicating bank statements?

A:   Credit card statements were duplicated to show there was [sic] not any losses.

Q:   Okay.  So you had her making fraudulent credit card statements to look like you weren't making those charges you were making?

A:   Correct.  Yes.

Q:   Okay.  And you used the money that you stole from RupCoe to purchase various property, correct, not houses, but cars and things?

A:   Yes.

Q:   Okay.  And specifically, you purchased a BMW and a Mercedes, at some point during this period, correct?

A:   Yes.

Q:   With the unauthorized funds, correct?

A:   Yes.

4

A-1042-23

Q:     Okay. And as part of this plea, and you've also put money into various things such as the church in Newark, correct?

A:     Yes.

Q:     And the money that you stole, you understand that you're paying back $710,000 as restitution, correct?

A:     Yes.

To support his plea to insurance fraud, defendant testified:

Q:     [A]t some point while you were working as a bookkeeper for RupCoe Plumbing and Heating, did you also call up your GEICO Car Insurance and pay a car insurance bill?

A:     Yes.

Q:     And did you represent to them that you had the authority to use Jim Coyle's (phonetic) credit card?

A:     No. That was a credit card that was I got (sic) in my name, I never said I was Jim Coyle.

Q:     Okay. At some point during this transaction, did you misrepresent to them that you had authorization to use a credit card when you really—it wasn't your money to use?

A:     Oh, yes.

Q:     Yes, you did misrepresent?

5

A: Yes, I gave them a credit card- I never said I had authorization, I gave them a credit card as if it was mine but I didn't represent that I was Jim Coyle at all.

Q: Okay. But you—you didn't have—you didn't have authorization to use anything?

A: No.

Q: Okay. So, you represented you had authorization to make this payment but you didn't?

A: Yes.

At the sentencing hearing, although defendant's attorney requested the judge to "consider . . . concurrent treatment" rather than impose consecutive sentences for the two crimes, the attorney ultimately asked the judge to sentence defendant according to the negotiated plea.

The victim provided a detailed and emotional impact statement that the trial judge acknowledged. In his decision, the trial judge specifically noted defendant's age and criminal history that reflected eight indictable convictions for similar crimes including larceny, embezzlement, mail fraud, and theft by deception. The court applied several aggravating factors, noting defendant's persistent criminal behavior, his risk of reoffending, and the general need for

6

deterrence from criminal behavior.[1]  See N.J.S.A. 2C:44-1(a)(3), (6), and (9).

The court also found a single mitigating factor – defendant's promise to provide

restitution to the victims.  N.J.S.A. 2C:44-1(b)(6).  After weighing the

aggravating factors against that in mitigation, the trial judge sentenced the

defendant according to the plea agreement.  The trial judge did not analyze the

Yarbough[2] factors, nor did he provide any analysis of the requirement under

N.J.S.A. 2C:21-27(c) that the sentences imposed be served consecutively.[3]

Defendant appealed his sentence.  At oral argument, and after noting the

sentence to be a "compromise of ten years on the money laundering and four

years on the insurance fraud," this colloquy occurred among the attorneys and

this court about the consecutive nature of the sentence:

> [Defense counsel]:    [W]ith    regard    to    the
> consecutive sentences, although there is a statute which
> purportedly applies to this situation that went under
> [N.J.S.A.] 2C:21-27(c), when a conviction for money
> laundering occurs, it shall be ordered to be served

---

[1]  The aggravating factors to be considered in sentencing appear at N.J.S.A. 2C:44-1(a), while the mitigating factors are listed at N.J.S.A. 2C:44-1(b).

[2]  State v. Yarbough, 100 N.J. 627, 643-44 (1985).

[3]  Under N.J.S.A. 2C:21-27(c), if a defendant is convicted of the money laundering statute, that defendant's sentence for the money laundering offense must be served consecutively to any sentence for the underlying criminal activity related to or from which the property involved was derived.

A-1042-23

consecutively to, quote, any offense constituting the criminal activity involved.

The issue here today, Your Honor, is whether . . . this offense was in the context of the criminal activity involved or whether the judge should at least note on the record and make some sort of finding that this offense was within the context of the financial facilitation.

> . . . .

Here, Your Honor, the other crime was insurance fraud, which if you look to the state court – the [s]tate's Supreme Court opinion in State v. Goodwin[4] from 2016, the harm of the insurance fraud statute is focused on the victim being the insurance company, whether someone has made a material misrepresentation to an insurance company that induces the insurance company to at least think about making a payment that they wouldn't have paid.

[The court]:    Let me just stop you there. Were these legal arguments of statutory construct[ion] and application made to the trial court?

[Defense counsel]:    No, Your Honor.

[The court]:    [Prosecutor], would you have any objection if we remanded for that precise purpose to give the trial court the first opportunity to consider these legal arguments and the State to appropriately weigh in or brief them as may be appropriate?

[The State]:    The State has no objection.

---

[4]  State v. Goodwin, 224 N.J. 102 (2016).

[The court]:          All right.

[(Emphasis added).]

The parties proceeded to discuss the victim impact statement presented at

the sentencing:

> [Defense counsel]:        So just with respect to the victim impact statement, the Supreme Court binding opinion is State v. Hess[5] from 2011.  The impact statement here went on for pages and pages.  There were multiple references to [Satan].  The defendant was compared to [Judas].  The victim said that God will not be mocked and compared the defendant to the thieves crucified along Jesus Christ.
>
> This was an emotional and evocative victim impact statement that went way over the line.  The judge actually—the defense attorney . . . objected halfway through to say that the victim was not addressing the judge, but was addressing the victim (sic) directly, and the judge told the defense attorney to quote, sit down, which is – you know, the Crime Victim Bill[] of Rights gives someone the ability to directly address the sentencing court, but not to sort of mock the defendant and it's not a time –
>
> [The court]:        And all that could potentially be vitiated by the [trial c]ourt taking a second look at the sentence anyway.
>
> [Defense counsel]:        Yes.
>
> [The court]:        – after considering your legal argument on the statutes, correct.

---

5  State v. Hess, 207 N.J. 123 (2011).

. . . .

> All right. [Prosecutor], in light of that, we – no objection again to <u>remand for that purpose</u>?

> [The State]: No, Your Honor.

> [(Emphasis added).]

Following our suggestion, at the excessive sentencing appeal, the parties prepared a consent order and noted that they "agree a remand is necessary for the following determination[s]":

> (1) For the sentencing court to place on the record the reasons for imposing consecutive sentences and whether the court relied on legislative considerations under only the money laundering statute[,] N.J.S.A. 2C:21-27(c)[; and]

> (2) to limit the victim impact statement to appropriate statements in accordance with <u>State v. Tedesco</u>, 214 N.J. [177], 196 (2013) and <u>State v. Hess</u>, 207 [N.J. 123 (2011).]

We incorporated that consent into an order and remanded the matter to the trial court. Although the term "resentencing" was used in that order, it is clear from the transcript and the wording of the consent order that the limited purpose of the remand was to address a specific legal and factual issues in the sentencing, not to require a completely new sentencing.

On remand, the trial judge interpreted the scope of our order to be limited, specifically to elucidate the reasons for the imposition of consecutive sentences and to address the concern that arose in the content of the victim impact statement. The trial judge did not interpret our order as to require a new sentencing hearing:

> [N]othing in anything [the Appellate Division] sent back to me indicated that the sentence was vacated. All they said was I needed to show the reasons assuming – my assumption was that if I had given my reasons and made more clear my reasons – and that – that could have been appealed and the Appellate Division then could have said well, your reasons weren't good enough so we're going to vacate the sentence and have you do this all over again. They didn't say that. Once I gave my reasons, whatever was taken up on appeal was subsequently withdrawn.
>
> So that's why I handled it the way I handled it. I want to just make it clear because again, if this was a vacating of a sentence, for me to resentence the defendant, that wasn't what was conveyed to me in writing, because I have to take my orders from . . . the Appellate Division, what they write in their remand orders. And that wasn't clear.

On this premise, and at the request of the State, the trial judge analyzed the factors outlined in Yarbough, 100 N.J. at 627 and the money laundering statute as the basis for his decision to order defendant to serve his prison terms consecutively. The trial judge noted that the money laundering statute "suggests

11

consecutive sentencing with respect to the sentence for the underlying crime." However, the legal question as to whether the insurance fraud conviction "constitute[ed] the criminal activity involved or from which the property derived" was not answered. See N.J.S.A. 2C:21-27(c). Ultimately, the trial court issued an order concluding that consecutive sentences were appropriate and fair under its Yarbough analysis. The trial judge reaffirmed defendant's consecutive prison terms and amended defendant's judgment of conviction accordingly. The trial judge did not address the entirety of the issues concerning the victim impact statement other than to note certain components of it in his Yarbough analysis.

Defendant appealed from his resentencing, but he later withdrew that appeal. In a separate application filed the following year, defendant moved to reduce his sentence. The trial court denied that request. Defendant then filed for PCR in a self-represented capacity. The trial court dismissed that application without prejudice and defendant subsequently refiled it. Defendant was appointed counsel who filed an amended petition for defendant. Defendant then moved to recuse the trial judge from hearing any further applications concerning defendant's indictment. The trial judge denied both applications and defendant's subsequent reconsideration motion.

In a forty-five-page opinion amplifying his oral PCR decision, the judge held that because defendant's ineffective assistance of counsel claim could have been argued on direct appeal and was not, the claim was procedurally barred. The trial judge also concluded the hearing on remand substantively satisfied the remand order. As to the victim impact statement, the trial judge concluded that it was proper under <u>Hess</u> because the statement "was not grossly inflammatory, unduly prejudicial, [n]or likely to divert the court from its focus on the aggravating and mitigating factors." The trial judge specifically "did not consider it as heavily" as he did at defendant's first sentencing hearing. Lastly, the trial judge concluded that defendant's motion for recusal was both procedurally barred and substantively infirm since defendant did not proffer any specific reasons that required his recusal.

In a separate order, the trial judge denied defendant's motion for reconsideration adopting the analysis set forth in his prior written opinion on defendant's PCR application.

On appeal, defendant raises these points for our consideration:

> POINT I. COUNSEL AT THE REMAND HEARING WAS INEFFECTIVE IN FAILING TO REQUEST THAT THE COURT CONDUCT A FULL RESENTENCING HEARING, AND IN FAILING TO OBJECT TO THE COURT'S FAULTY ANALYSIS OF [THE] <u>YARBOUGH</u> FACTORS AND [N.J.S.A.]

13

2C:21-27(C) FACTORS AND FAILURE TO ADDRESS THE VICTIM IMPACT STATEMENT.

A.      Counsel at the Remand Hearing Was Ineffective in Not Requesting a Full Resentencing Hearing and In Simply Acquiescing When the Judge Failed to Conduct One.

B.      The Judge Engaged in a Faulty Yarbough Analysis, [a]nd In a Faulty Analysis of the Impact of [N.J.S.A.] 2C:21-27(c).

        . . . .

        1.      The Judge Engaged in [a] Faulty Yarbough analysis.

        2.      The Judge Engaged in a Faulty Analysis of the Impact of [N.J.S.A.] 2C:21-27(c) on the Sentence He Imposed.

C.      The Judge Did Not Engage in the Analysis and Redaction of the Victim Impact Statement Contemplated by the Appellate Division Remand Order.

D.      [Defendant] Should Not Be Procedurally Barred From Raising These Claims on PCR.

POINT II. [DEFENDANT] IS ENTITLED TO AN EVIDENTIARY HEARING, WHICH SHOULD BE CONDUCTED BY A DIFFERENT JUDGE BECAUSE THE PCR JUDGE FAILED TO ADEQUATELY ADDRESS THE ISSUE OF HIS DENIAL OF [DEFENDANT]'S RIGHT TO HIS OWN CHOICE OF COUNSEL.

14

A.	[Defendant] is Entitled to an Evidentiary Hearing.

B.	The Hearing Should Be Conducted By a Different Judge Because [t]he PCR Judge Did Not Adequately Address [t]he Choice of Counsel Issue and Because His Testimony Could Be Required At a Future Hearing.

POINT III. THE MATTER MUST BE REMANDED TO A DIFFERENT JUDGE DUE TO THE PCR JUDGE'S DENIAL OF [DEFENDANT]'S MOTION FOR RECONSIDERATION WITHOUT ANALYSIS.

II.

The first issues we address are defendant's contentions that the remand order required a full resentencing hearing and that defendant's attorney in those proceedings was ineffective by not arguing that defendant was entitled to one. In opposition, the State argues that defendant's counsel was effective because our order was specific as to the limited scope of the trial court's action on remand and counsel's correspondingly limited role. We agree with the State.

Defendant makes consistent thematic arguments throughout his appeal premised on the assumption that we remanded this matter for a new, full-blown sentencing hearing. The record does not support defendant's contention. Rather, we returned this case to the trial court only for a "precise purpose" and specifically for the trial court (1) to provide further detail about the reasons

15

supporting consecutive sentencing, and (2) to limit the victim impact statement's consideration.

"[R]emands for resentencing 'cover a range of proceedings, from vacated sentences which required sentencing anew to mere corrections of technical errors.'" State v. Robinson, 217 N.J. 594, 610-11 (2014) (quoting State v. Randolph, 210 N.J. 330 (2012)). When a remand order is "not only for the reconsideration and justification of the consecutive nature of the sentences, but also for the same reconsideration and justification for the imposition of maximum terms, [it] necessarily requires a new analysis of the aggravating and mitigating factors." Randolph, 210 N.J. at 354. However, if the remand order "specifies a different and more limited resentencing proceeding" or "the remand order is limited in scope[,]" the trial court need not engage in such an involved hearing. Id. at 351, 350. Remand proceedings may be "circumscribed by the remanding appellate body's delineation that a limited proceeding is sufficient." Id. at 352; see also State v. Bellamy, 468 N.J. Super. 29, 39-40 (App. Div. 2021).

Here we did not vacate defendant's sentence and the trial judge properly imposed a sentence consistent with the terms of the negotiated plea agreement. Further, our order did not direct the trial judge to reconsider the length of the sentence nor did we require the judge to re-evaluate the presence nor weight of

any aggravating or mitigating factors. Instead, we returned the matter to the trial court for the "precise purpose" to address a limited legal issue concerning the consecutive nature of the service of the sentences because the defendant was convicted of money laundering under N.J.S.A. 2C:21-27(c). Therefore, we conclude defendant was not entitled to be sentenced anew.

III.

At defendant's sentencing appeal, both defendant and the State indicated a desire and willingness to address the mandatory sentencing requirement contained in the money laundering statute and whether a consecutive sentence was required on this record. However, neither party argued this issue substantively during the hearing on remand, nor did the trial judge rule on this specific issue.

Our review of the transcript of defendant's sentencing appeal reveals that the parties only highlighted a specific legal issue as to whether the conviction for insurance fraud would trigger the mandatory consecutive service of the sentence for that offense and for his money laundering conviction. That specific language was included in the consent order. Different counsel appeared for the State at the hearing on remand and might not have been privy to the proceedings before us since counsel did not argue this issue at all and, rather, noted in error,

17

that we "wanted [the trial court] to go through the <u>Yarbough</u> factors." Defendant also had different counsel at the sentencing appeal than on remand. Since the details and instructions of the remand were not incorporated specifically into the order, and the parties did not substantively argue the matter at the hearing, we do not find error with the trial court's lack of consideration of this issue.

IV.

During the hearing on remand, and although not necessary because of the mandatory nature of consecutive sentences under the money laundering statute, the trial court nevertheless properly considered the <u>Yarbough</u> factors to justify the sentence and to conclude that this negotiated sentence was fair.

It is axiomatic that sentencing decisions are discretionary. <u>State v. Cuff</u>, 239 N.J. 321, 347 (2019). Therefore, we review a sentence for an abuse of discretion. <u>State v. Jones</u>, 232 N.J. 308, 318 (2018). We defer to the sentencing court's factual findings and should not "second-guess" them. <u>State v. Case</u>, 220 N.J. 49, 65 (2014). We "must affirm the sentence of a trial court unless: (1) the sentencing guidelines were violated; (2) the findings of aggravating and mitigating factors were not 'based upon competent credible evidence in the record;' or (3) 'the application of the guidelines to the facts' of the case 'shock[s] the judicial conscience.'" <u>State v. Bolvito</u>, 217 N.J. 221, 228 (2014) (quoting

18

State v. Roth, 95 N.J. 334, 364-65 (1984)). "To facilitate meaningful appellate review, trial judges must explain how they arrived at a particular sentence." Case, 220 N.J. at 65.

"[T]rial judges have discretion to decide if sentences should [be served] concurrently or consecutively." State v. Miller, 205 N.J. 109, 128 (2011); see N.J.S.A. 2C:44-5(a). Judges are permitted to impose consecutive sentences after considering the Yarbough factors:

> (1) there can be no free crimes in a system for which the punishment shall fit the crime;
>
> (2) the reasons for imposing either a consecutive or concurrent sentence should be separately stated in the sentencing decision;
>
> (3) some reasons to be considered by the sentencing court should include facts relating to the crimes, including whether or not:
>
> > (a) the crimes and their objectives were predominantly independent of each other;
> >
> > (b) the crimes involved separate acts of violence or threats of violence;
> >
> > (c) the crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior;

19

(d)  any of the crimes involved multiple victims;

(e)  the convictions for which the sentences are to be imposed are numerous;

(4)  there should be no double counting of aggravating factors;

(5)  successive terms for the same offense should not ordinarily be equal to the punishment for the first offense . . . .

[100 N.J. at 643-44.]

The Yarbough factors are applied qualitatively, not quantitatively.  State v. Carey, 168 N.J. 413, 427 (2001).  A court may impose consecutive sentences even though a majority of the Yarbough factors support concurrent ones.  Id. at 427-28; see also State v. Swint, 328 N.J. Super. 236, 264 (App. Div. 2000). "When a sentencing court properly evaluates the Yarbough factors in light of the record, the court's decision will not normally be disturbed on appeal." Miller, 205 N.J. at 129.

In his written opinion following his oral decision, the trial judge systematically evaluated both the presence and the quality of each of the Yarbough factors and ultimately concluded that the negotiated plea and sentence was fair as required by State v. Torres, 246 N.J. 246 (2021).  In light of the nature of the offenses, the elements necessary to establish each offense, and

supported by the factual basis provided for each offense, we agree with the trial court that "the crimes were separate and apart from one another, against separate victims, committed on separate dates, and in separate fashion . . . . "

Combining these observations with the trial court's detailed analysis of the pertinent aggravating and mitigating factors and considering the specific facts of this case, we discern no error in the exercise of the trial court's discretion in concluding that the consecutive service of the sentences was proper and was fair.

V.

We next consider defendant's arguments regarding the sentencing hearing after our remand as they pertain to the victim impact statement. Defendant argues that he is entitled to a complete resentencing because the trial court did not "limit the victim impact statement to appropriate statements under State v. Tedesco, 214 N.J. [177], 196 (2013) and State v. Hess, 207 N.J. 123 (2011)." The State disagrees and maintains that the court followed the subject case law and the consent order and limited the impact of the complaining witness, doing so it "in its proper context."

Although the trial judge did not address the victim impact statement orally at the conclusion of the remand hearing, the judge dedicated twelve pages of his

written decision to the issue concerning the victim's statement and acknowledged that he "limited [his consideration of] the victim impact statement to appropriate statements in accordance with Tedesco." We find that the trial court judge properly followed our mandate, limited the statement as we required, and sentenced defendant consistent with the terms of the negotiated plea agreement. The trial judge considered the words and sentiment of the statements made by the victim, but only insofar as they were appropriate, and accorded them appropriate weight under the plea. Accordingly, we find no error in the judge's exercise of discretion.

## VI.

The gravamen of defendant's argument that his PCR attorney did not provide effective legal assistance is based on his belief that the attorney should have pressed the trial judge to hold a full resentencing hearing on remand to permit defendant to present any mitigating evidence that arose since his original sentencing date as permitted by Randolph, 210 N.J. at 351. The State counters that defendant's attorney was effective since the attorney's representation and arguments were limited by our remand order and that the attorney focused the pertinent advocacy within that defined framework.

A-1042-23

To establish a claim of ineffective assistance of counsel, defendant must satisfy a two-prong test: (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) "the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984); see also State v. Fritz, 105 N.J. 42, 58 (1987) (adopting the two-prong Strickland test in New Jersey).

Under the first prong of Strickland/Fritz, defendant must rebut the "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance[.]" Strickland, 466 U.S. at 689. Thus, we must consider whether counsel's performance fell below an objective standard of reasonableness. Id. at 688.

In order to satisfy the second prong of Strickland/Fritz, defendant must demonstrate prejudice and, specifically, that there was a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Ibid. "[I]f counsel's performance has been so deficient as to create a reasonable probability that these deficiencies materially contributed to defendant's conviction, the constitutional rights will have been violated." Fritz, 105 N.J. at 58.

23                                                                      A-1042-23

Here, as we have previously noted, our remand was limited to a specific issue as to the reasons supporting the consecutive nature of the sentences imposed. Defendant has not established that any argument beyond that limited scope we defined would have been successful. Defendant, therefore, failed to establish a "reasonable probability that, but for counsel's [purported error], the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

## VII.

Defendant's remaining arguments, including his request for the trial judge's recusal if we were to remand this matter, lack merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

24