14 A.3d 790 (2011)
418 N.J. Super. 548
STATE of New Jersey, Plaintiff-Respondent,
v.
James D. PENNINGTON, Defendant-Appellant.
No. A-2637-09T2.
Superior Court of New Jersey, Appellate Division.
Submitted January 11, 2011.
Decided March 21, 2011.
*791 Yvonne Smith Segars, Public Defender, attorney for appellant (David A. Gies, Designated Counsel, on the briefs).
Marlene Lynch Ford, Ocean County Prosecutor, attorney for respondent (Samuel J. Marzarella, Supervising Assistant Prosecutor, of counsel and on the brief).
Before Judges CARCHMAN, GRAVES, and WAUGH.
The opinion of the court was delivered by
WAUGH, J.A.D.
Defendant James Pennington appeals the denial of his petition for post-conviction relief (PCR). We affirm as to all issues except the sentence, which we vacate and remand for resentencing consistent with this opinion.

*792 I.
We discern the following facts and procedural history from the record on appeal.
On August 6, 1993, Michael York and David Pomeroy were working at a restaurant in Toms River. York was the manager of the restaurant. At approximately 11:00 p.m., he asked Pomeroy, the kitchen manager, to walk with him to the bank next door to make a deposit. They left through the back of the restaurant and walked through a parking lot and row of trees toward the bank. According to York, the parking lot was well lit, "almost like daylight."
As they passed through the trees, Pennington approached. He was holding a silver revolver with a long barrel. He repeatedly told York and Pomeroy: "Give me the money." When York was an arm's length away from Pennington and could see his face, York handed him the money. Pennington then fled toward a "dark car" and left the area. York ran back to the restaurant, where he asked someone to call the police.
The following morning, York and Pomeroy went to the police station to meet with a sketch artist. They helped him create a composite sketch of the man who robbed them. The sketch depicted the man as wearing wire-rimmed glasses.
On August 10, Detective Sergeant Roger Kriney presented a photo array to York. None of pictures depicted men with eyeglasses. York identified Pennington as the man who robbed him. However, because Kriney thought York's identification appeared tentative, he did not ask York to sign the back of the photograph.
On August 12, Pomeroy went to the police station to view the photo array. Pomeroy told Kriney that he had not had any conversations with York about the array. Pomeroy identified Pennington as the man who robbed him and York.
On August 16, Kriney visited York at the restaurant. He showed York a photo array that did not contain Pennington's photo. York did not identify anyone from that array. Kriney next showed York an array containing Pennington's photo. York again identified him as the robber. York signed the photograph at that time.
After the robbery, Detective John Stillwell saw an alert bulletin from the Dover Township Police regarding a dark-colored Oldsmobile Toronado that was involved in the robbery. He remembered seeing a car and driver matching the description on the alert while he was on patrol the night before the robbery. Stillwell informed Kriney that he had a "good look" at the driver of that vehicle. On August 16, Kriney showed Stillwell a photo array. Stillwell identified Pennington as the man he saw driving the dark Toronado the night before the robbery.
Pennington owned an Oldsmobile Toronado. When he was arrested, he had $1000 in cash in his possession. Pennington told Kriney that he had seen Fati Sekou with a handgun the day before and the night of the robbery. He further claimed that he allowed Sekou to borrow his Toronado in exchange for heroin and that he was in Sekou's motel room using heroin while Sekou was using the Toronado. When Sekou returned, according to Pennington, Sekou gave him the cash and more heroin.
On November 3, 1997, Pennington was convicted of first degree armed robbery, N.J.S.A. 2C:15-1 (count one), and second degree conspiracy to commit armed robbery, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:15-1 (count two).[1] At sentencing on December *793 19, 1997, the trial judge merged the armed robbery conviction with the conspiracy conviction. He then sentenced Pennington to a discretionary extended term of life in prison with twenty-five years of parole ineligibility. He made the term consecutive to an extended-term life sentence Pennington was already serving. Although that offense was committed after the armed robbery involved in this appeal, it had been adjudicated and the sentence imposed prior to the conviction in this case.
Pennington appealed. We affirmed the conviction and sentence, State v. Pennington, No. A-6920-99 (App.Div. May 7, 2003), and the Supreme Court denied certification. 177 N.J. 574, 832 A.2d 324 (2003).
In December 2003, Pennington filed a petition for post-conviction relief (PCR). In August 2005, the Law Division dismissed the petition for failure to prosecute. Pennington's motion for reinstatement was denied in October 2005. He appealed. We initially affirmed, but on reconsideration we reversed and remanded to the Law Division for oral argument on Pennington's petition. State v. Pennington, No. A-2223-05, 2008 WL 3896670 (App.Div. Aug. 26, 2008).
The PCR judge heard oral argument on August 12, 2009. In a detailed oral opinion delivered following the argument, the judge denied relief and dismissed the petition. This appeal followed.

II.
On appeal, Pennington raises the following issues:

POINT ONE: THE TRIAL COURT'S IMPOSITION OF A SECOND LIFE TERM IS ILLEGAL WHERE ONLY THREE YEARS BEFORE THE DEFENDANT WAS SENTENCED BY ANOTHER COURT TO AN EXTENDED LIFE TERM.

POINT TWO: THE DEFENDANT'S TRIAL ATTORNEY WAS CONSTITUTIONALLY INEFFECTIVE WHERE HE FAILED TO BE ADEQUATELY PREPARED TO PROFFER ANY PRETRIAL EVIDENCE THAT THE OUT-OF-COURT POLICE PROCEDURES WERE IMPERMISSIBLY SUGGESTIVE.

POINT THREE: THE POLICE OFFICER'S OUT-OF-COURT IDENTIFICATION OF THE DEFENDANT AS THE DRIVER OF THE VEHICLE HE OBSERVED THE NIGHT BEFORE THE CRIME WAS NOT RELIABLE AND SHOULD HAVE BEEN BARRED.

POINT FOUR: THE PCR COURT ERRED IN FAILING TO REVIEW WHETHER THE DEFENDANT'S TRIAL ATTORNEY WAS CONSTITUTIONALLY DEFICIENT WHEN IT DID NOT CONDUCT AN EVIDENTIARY HEARING TO DETERMINE WHY THE ATTORNEY CHOSE NOT TO REEXAMINE THE OUT-OF-COURT IDENTIFICATION PROCEDURE.
"Post-conviction relief is New Jersey's analogue to the federal writ of habeas corpus." State v. Preciose, 129 N.J. 451, 459, 609 A.2d 1280 (1992). Under Rule 3:22-2, there are four grounds for PCR:
(a) Substantial denial in the conviction proceedings of defendant's rights under the Constitution of the United States or the Constitution or laws of the State of New Jersey;
(b) Lack of jurisdiction of the court to impose the judgment rendered upon defendant's conviction;

*794 (c) Imposition of sentence in excess of or otherwise not in accordance with the sentence authorized by law. . . .
(d) Any ground heretofore available as a basis for collateral attack upon a conviction by habeas corpus or any other common-law or statutory remedy.
"A petitioner must establish the right to such relief by a preponderance of the credible evidence." Preciose, supra, 129 N.J. at 459, 609 A.2d 1280. To sustain that burden, specific facts which "provide the court with an adequate basis on which to rest its decision" must be articulated. State v. Mitchell, 126 N.J. 565, 579, 601 A.2d 198 (1992).
Pennington's first argument relates to Rule 3:22-2(c), imposition of an illegal sentence. He argues that the trial judge's imposition of an extended life term was not permitted under N.J.S.A. 2C:44-5(b) because he was already serving an extended term arising from a crime committed after the robbery for which he was being sentenced. Consequently, he argues, it was an illegal sentence. We agree.
N.J.S.A. 2C:44-5(b), which governs sentences of imprisonment imposed at different times, provides in relevant part as follows:
When a defendant who has previously been sentenced to imprisonment is subsequently sentenced to another term for an offense committed prior to the former sentence, other than an offense committed while in custody:
(1) The multiple sentences imposed shall so far as possible conform to subsection a. of this section. . . .
The relevant section of N.J.S.A. 2C:44-5(a), which governs sentences for more than one offense, provides:
When multiple sentences of imprisonment are imposed on a defendant for more than one offense . . . such multiple sentences shall run concurrently or consecutively as the court determines at the time of sentence, except that:
. . . .
(2) Not more than one sentence for an extended term shall be imposed.
Pennington asserts that a plain reading of those two sections together precluded the imposition of another extended term sentence under the then-existing circumstances.
The State argues to the contrary. The State relies on State v. Williams, 299 N.J.Super. 264, 690 A.2d 1082 (App.Div. 1997) and State v. Reldan, 231 N.J.Super. 232, 555 A.2d 653 (App.Div.1989), both of which it argues permitted the judge to sentence Pennington to a second extended term.
In Reldan, the defendant had been convicted of advocating homicide and conspiracy to commit murder in 1978 and sentenced as a habitual offender pursuant to N.J.S.A. 2A:85-12. That statute is the extended term predecessor of N.J.S.A. 2C:44-3. In 1981, while serving his habitual offender sentence, Reldan pled guilty to conspiracy to escape from state prison and possession of a weapon for an unlawful purpose. He was sentenced to a second extended term following his guilty plea. Reldan, supra, 231 N.J.Super. at 236, 555 A.2d 653.
On appeal, Reldan argued, among other things, that the second extended term was improper, citing N.J.S.A. 2C:44-5(a)(2). We rejected that argument and held that N.J.S.A. 2C:44-5(a)(2) "has no application. . . where extended terms are imposed by two different courts for different offenses at proceedings separated by a span of nine years" because "the statute speaks only to situations where multiple sentences are imposed at the same proceeding for more *795 than one offense." Reldan, supra, 231 N.J.Super. at 238, 555 A.2d 653.
Pennington aptly notes, however, that our opinion in Reldan did not discuss N.J.S.A. 2C:44-5(b)(1), the statutory provision at issue here. In addition, the escape for which Reldan was sentenced occurred while he was serving the first extended term. In our opinion, we noted that the offenses took place nine years apart. Ibid. Consequently, N.J.S.A. 2C:44-5(b) would not have applied because Reldan was not being sentenced for an offense that occurred prior to the sentence he was serving. By its terms, N.J.S.A. 2C:44-5(b)(1) only applies when the sentencing offense occurred prior to the offense for which the existing extended term is being served.
In Williams, the defendant pled guilty to burglary and was initially sentenced as a persistent offender to an extended term in accordance with the plea agreement. He then filed a motion for reconsideration of the sentence, and was resentenced to probation conditioned on his completion of a substance abuse program. A year later, the defendant was arrested for burglary and theft, and was eventually sentenced to an extended term on those charges. His probation on the earlier offense was revoked. At sentencing, the judge reimposed the original extended term.
On appeal, Williams argued, among other things, that N.J.S.A. 2C:44-5(a)(2) prohibited the reimposition of the extended term, because he had just received an extended term for the new offenses. We rejected that argument, relying on Reldan:
The statute "speaks only to situations where multiple sentences are imposed at the same proceeding for more than one offense." State v. Reldan, 231 N.J.Super. 232, 238 [555 A.2d 653] (App.Div. 1989). It does not apply to a situation in which two different courts have imposed extended terms for different offenses. Ibid. Defendant was sentenced on the new convictions and violation of probation at a separate time in a separate proceeding by two different courts. Extended terms could legally be imposed at each separate proceeding.
[Williams, supra, 299 N.J.Super. at 272-73, 690 A.2d 1082.]
Pennington correctly observes that our opinion in Williams does not specifically cite or discuss N.J.S.A. 2C:44-5(b)(1), and that it relies on our opinion in Reldan, which is not applicable to N.J.S.A. 2C:44-5(b)(1). Consequently, the precedential value of Williams is minimal.
There is little helpful legislative history with respect to N.J.S.A. 2C:44-5(b)(1) in New Jersey. However, the text of N.J.S.A. 2C:44-5(b)(1) mirrors § 7.06(2)(a) of the Model Penal Code (Code). See I Final Report of the New Jersey Criminal Law Revision Commission § 2C:44-5, at 158 (1971).[2] When a Title 2C provision is modeled on the Code, it is appropriate to look at the Code and its commentaries in seeking to interpret the intent of the statutory language. State v. D.A., 191 N.J. 158, 167, 923 A.2d 217 (2007); MacDougall v. Weichert 144 N.J. 380, 395, 677 A.2d 162 (1996) ("The source of our statute is the [Code]. That history is highly relevant in determining the legislative intent underlying our parallel enactments.").
Section 7.06(2)(a) of the Code, which governs sentences imposed at different times, provides, in pertinent part, as follows:

*796 When a defendant who has previously been sentenced to imprisonment is subsequently sentenced to another term for a crime committed prior to the former sentence, other than a crime committed while in custody:
(a) the multiple sentences imposed shall so far as possible conform to Subsection (1) of this Section. . . .
Section 7.06(1)(d), like N.J.S.A. 2C:44-5(a)(2), provides that "not more than one sentence for an extended term shall be imposed."
The Code's "Explanatory Note" to § 7.06 explains its purpose.
Subsection (2) is grounded on the principle that the timing of trials or the number of trials for different offenses should not affect the limitations established by Subsection (1). Thus, if a defendant has committed two offenses, the sentencing limitations established by this section will apply if he is tried separately for the two crimes as well as if he is tried for both offenses at the same time. Subsection (2) also sets forth other principles to control the situation in which the defendant is being sentenced for an offense that was committed prior to the imposition of another sentence.
[Model Penal Code and Commentaries: Part I § 7.06, at 270-71 (1985).]
The "Comment" section of the Code expands upon the text of the "Explanatory Note,"[3] in pertinent part, as follows:
3. Sentences of Imprisonment Imposed at Different Times. Subsection (2) is based on the premise that the timing of the trials for multiple charges against a defendant should have as little bearing on the extent of his exposure to consecutive sentences as possible. In other words, the limits on consecutive sentences should apply in like manner when the defendant is tried and sentenced in the same proceeding for multiple offenses and when he is tried separately for each of them, either by the same court or by another comparable court within the same state.
The paradigm at which the subsection is aimed occurs when a defendant is tried, convicted and sentenced to imprisonment, and subsequently is tried and convicted of a second offense committed prior to the imposition of the first sentence. In that event there is no basis for enlarging the limits on consecutive sentences that would otherwise be applicable had the two offenses been tried at the same time.
[Model Penal Code and Commentaries: Part I, Comment to § 7.06, at 277-78 (1985) (footnotes omitted).]
Although New Jersey did not adopt the Code's proposed limitation on consecutive sentences, § 7.06(1)(b) and (c), referred to in the Comment, the Legislature did include the parallel prohibition on more than one extended term found in § 7.06(1)(d). See N.J.S.A. 2C:44-5(a)(2). Consequently, the reasoning of the Comment also applies to the issue of multiple extended terms.
A plain reading of the statutory language and the available legislative history supports Pennington's argument that the imposition of a second extended term under the circumstances of this case was not permitted. As the Supreme Court held in State v. Froland, 193 N.J. 186, 194, 936 A.2d 947 (2007), "[i]n criminal cases, interpretation of a statute is restricted by the rule of lenity which requires us to *797 strictly construe penal statutes in favor of a criminal defendant."
We conclude, therefore, that the trial judge imposed an illegal sentence subject to correction in a PCR proceeding. R. 3:22-2(c). We vacate the sentence and remand for resentencing consistent with this opinion.
Pennington's remaining arguments concern his assertion that his trial attorney was so ineffective that he was deprived of his constitutional right to counsel, as well as an argument that one of the State's identification witnesses gave unreliable testimony. Having reviewed those arguments in light of the record before us, we find them to be without merit and not warranting discussion in a written opinion. R. 2:11-3(e)(2). The claim concerning the witness's reliability could have been raised on direct appeal and is barred. R. 3:22-4. We make the following brief comment with respect to the ineffective assistance of counsel issue.
An evidentiary hearing is only required to resolve issues of fact when there has been a prima facie showing of ineffective assistance of counsel. Preciose, supra, 129 N.J. at 462-64, 609 A.2d 1280. We agree with the PCR judge's conclusion that no such showing was made in this case. The judge carefully considered Pennington's arguments and reviewed the transcript of the Wade[4] hearing, correctly determining that there was no ineffective assistance of counsel.
Affirmed in part; sentence vacated and remanded for resentencing.
NOTES
[1] An earlier trial had resulted in a hung jury.
[2] The commentary on N.J.S.A. 2C:44-5(b) in the Commission's Report is very brief and does not address the specific issue before us.
[3] The "Explanatory Note" makes reference to Code provisions, such as a limit on consecutive terms, not adopted in N.J.S.A. 2C:44-5(a).
[4] United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).