**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4100-23

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

MARK WARNER,
a/k/a MARK M. WARNER,
and MARVIN WARNER,

     Defendant-Appellant.

_____

Submitted December 15, 2025 – Decided January 7, 2026

Before Judges Sabatino and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 07-08-3025.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Monique Moyse, Designated Counsel, on the brief).

Theodore N. Stephens, II, Essex County Prosecutor, attorney for respondent (Stephen A. Pogany, Assistant Prosecutor, on the brief).

PER CURIAM

This matter returns to us again after our remand for an evidentiary hearing on defendant Mark Warner's petition for post-conviction relief (PCR). The PCR judge conducted the evidentiary hearing and denied relief in a May 24, 2024 order and written opinion. On appeal, defendant renews his claims his counsel provided ineffective representation, specifically arguing:

> POINT ONE
>
> [DEFENDANT] IS ENTITLED TO RELIEF ON HIS CLAIM THAT HIS ATTORNEY RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILING TO INVESTIGATE AND ADEQUATELY COMMUNICATE.
>
> POINT TWO
>
> THIS MATTER MUST BE REMANDED BECAUSE THE PCR COURT DENIED RELIEF WITHOUT MAKING FINDINGS OF FACT OR CONCLUSIONS OF LAW ON MR. WARNER'S CLAIM THAT COUNSEL RENDERED INEFFECTIVE ASSISTANCE FOR FAILING TO INVESTIGATE A WITNESS WHO PROVIDED AN AFFIDAVIT ATTESTING TO OVERHEARING TWO MEN IMPLICATING THEMSELVES IN THE HOMICIDE FOR WHICH MR. WARNER WAS CHARGED, AND THE APPELLATE DIVISION PREVIOUSLY REMANDED THIS CASE FOR THE PCR COURT TO RULE ON THIS CLAIM.

Having considered the record developed at the evidentiary hearing against the applicable legal principles, we reject defendant's arguments and affirm.

2

We incorporate by reference the facts and procedural history set forth at length in our prior PCR opinions. See State v. Warner, No. A-5348-14 (App. Div. Feb. 10, 2017) (Warner I), and State v. Warner, No. A-4546-19 (App. Div. April 1, 2022) (Warner II). For context, we detail the relevant facts from those opinions as well as those elicited at the evidentiary hearing.

Defendant pled guilty in 2012 to first-degree aggravated manslaughter, first-degree robbery, second-degree conspiracy to commit robbery, and fourth-degree credit card theft. The charges against defendant and his two co-defendants arose from their robbery of the victim, who was beaten to death by one of the co-defendants. At his plea colloquy, defendant admitted he and one of his co-defendants acted as lookouts while another co-defendant beat the victim with a pipe. Days later, defendant attempted to use the victim's credit card. He also gave inculpatory statements to the police.

Defendant entered his plea in exchange for the State's recommendation that the other charges against him, including first-degree murder, be dismissed and that he be sentenced to no more than eighteen years in prison. At sentencing, the court imposed an aggregate seventeen-year term of imprisonment, subject to an eighty-five percent period of parole ineligibility pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2. Defendant appealed, arguing only that his

sentence was excessive because it was disparate as compared to his co-defendant, who actually beat the victim, and who the court sentenced to a nine-year term after his guilty plea. We heard oral argument on our excessive sentencing calendar and affirmed defendant's sentence, but "remanded to the trial court for entry of an amended judgment of conviction" to reflect the merger of two counts to which defendant pled guilty. See State v. Warner, No. A-3472-12 (App. Div. June 3, 2014).

Defendant filed a timely pro se petition for PCR claiming that he received ineffective assistance of counsel. Defendant argued his original counsel failed to interview a witness who allegedly made a statement to police indicating that defendant was not present at the robbery. Defendant also asserted that counsel failed to file a pretrial motion "opposing [defendant's] charges" despite defendant informing him that he was "forced" to make statements to the police while he was "not in [his] right mind."

In addition, defendant claimed his second attorney never reviewed the case or discovery with him, and failed to investigate the matter properly or interview all relevant witnesses. He maintained "[t]here was a signed affidavit in [his] discovery" from a woman who "overheard [two] . . . males bragging

A-4100-23

about [committing] [the] homicide" defendant was charged with, but his counsel failed to interview her.

He alleged further that counsel "bullied" and "pressured" him into pleading guilty including "forc[ing] [him] to place [his] initials on several pieces of paper," and refused to let him proceed to trial and raise an insanity defense. Specifically, defendant stated counsel told him that if he went to trial, he would "[lose] and die in prison" and that if he mentioned his reservations about pleading guilty in court the "judge [would] give [him] [forty] years." Defendant also claimed that he asked counsel to be "reexamined by a different psychologist" prior to his plea, but he refused to do so.

Finally, defendant contended his third attorney refused to let defendant withdraw his guilty plea and failed to argue defendant's "mental illness as a mitigating factor" at sentencing. He elaborated that counsel said that if he asked to withdraw the plea "without a good reason . . . the judge would deny [his] request and sentence [him] to whatever [the court] wanted," and that counsel "made [him] very afraid."

Defendant's pro se petition also described that he had been evaluated and declared incompetent to stand trial in 2009 and 2011, but was reevaluated before his plea hearing and declared competent. Defendant's appointed PCR counsel

5

filed a supplemental brief, which incorporated by reference defendant's pro se petition, and raised additional arguments based upon his attorney's failure to address his purported disparate sentence.

The PCR judge heard oral arguments and denied defendant's petition without an evidentiary hearing. She did not, however, address the arguments raised in defendant's pro se PCR petition. Defendant appealed and we affirmed in part and remanded in part. Specifically, we affirmed the PCR judge's denial of defendant's petition as to those arguments raised in his appointed counsel's brief, but remanded for consideration of the arguments contained in defendant's pro se PCR submission. See Warner I, slip op. at 6-7.

On remand, defendant was represented by new PCR counsel who filed a letter brief and supplemental certification. PCR counsel's letter-brief described that defendant had a history of treatment for mental health "throughout his life and continuing into 2005 and 2006 immediately prior to his arrest" and was evaluated in 2009 and found not competent to stand trial. It explained further that defendant was evaluated by two doctors in 2010. The first found defendant not competent to stand trial, but the "State's doctor," with whom the court agreed, reached an opposite conclusion.

6

PCR counsel's brief also inventoried defendant's ineffective assistance of counsel claims, many of which were repetitive of those contained in defendant's pro se petition. Regarding defendant's original trial counsel, PCR counsel argued "counsel did not file the [m]otions [defendant] wanted filed including [a] Miranda [m]otion to [s]uppress [s]tatements because [defendant] was not competent." He also claimed, "second trial counsel bullied [defendant] into pleading guilty and did not investigate." Finally, PCR counsel argued that his third trial counsel "also bullied him . . . not to bring up his desire to withdraw the plea" and failed to assert relevant mitigating factors at sentencing.

In his certification, defendant stated his "trial counsels" failed to "investigate, speak to witnesses," and review discovery with him. He also described being evaluated in 2009 resulting in a determination that he was "not competent" but reevaluated two years later, at which time the "court determined [he] was . . . competent." Finally, defendant identified Marshell Milliner as the alibi witness referenced in his initial pro se petition, who he claimed his first counsel failed to contact.

On March 6, 2020, the same judge who ruled on defendant's initial PCR petition heard oral arguments and placed her decision on the record. The PCR judge found that defendant had not presented a prima facie claim of ineffective

assistance under the two-part test detailed in <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984),[1] and an evidentiary hearing was therefore not required. She issued a corresponding written order the same day.

We concurred with the PCR judge and concluded defendant failed to establish a prima facie case of ineffective assistance of counsel with respect to all but two of his claims and thus found no error in the PCR judge's decision denying defendant's request for an evidentiary hearing as to those arguments. We agreed with defendant, however, that the PCR judge erred by not addressing defendant's arguments that counsel was ineffective by failing to investigate exculpatory witnesses purportedly identified by defendant and adequately communicate with him. See <u>Warner II</u>, slip op. at 11-12.

Specifically, defendant alleged in his pro se PCR petition that his first and second attorneys failed to investigate his case and did not "interview[ ] any [relevant] witnesses" including Milliner, a potential alibi witness, and a woman who allegedly provided an affidavit attesting to overhearing two men implicating themselves in the homicide for which defendant was charged.

---

[1] To establish ineffective assistance of counsel, a convicted defendant must satisfy the two-part test enunciated in <u>Strickland</u>, 466 U.S. at 687, by demonstrating that: 1) counsel's performance was deficient, and 2) the deficient performance actually prejudiced the accused's defense. The Strickland test has been adopted in New Jersey. See <u>State v. Fritz</u>, 105 N.J. 42, 58 (1987).

Defendant alleged further that his second attorney never reviewed the case or discovery with him and that he "would not [listen] to anything that [defendant] had to say," and that his third attorney "would not listen to him" and "could not understand [his] [slurred] speech." The PCR judge, however, did not address these claims. As such, we determined a remand was again warranted for the court to address these arguments under the two-part Strickland test and issue appropriate Rule 1:7-4 findings. Accordingly, we remanded solely for the court to consider those specified issues. See Warner II, slip op. at 12.

Following our latest remand, the same PCR judge who presided over the prior PCR proceedings conducted an evidentiary hearing during which defendant's original counsel testified as the State's only witness. He stated he was counsel for the defendant after his indictment in 2006 and that he had been assigned to the case by the Public Defender's Office as a pool attorney. Counsel further testified that although he spoke with defendant only a couple of times over the phone, he had many conversations with defendant during his visits at the jail. He also stated he reviewed discovery with defendant and that he recalled vaguely having a conversation with him about Milliner.

Counsel testified after learning Milliner gave an initial, taped statement to detectives potentially providing an alibi for defendant, he conducted a thorough

A-4100-23

investigation with the support of two investigators that included conversations with Milliner at her residence. Counsel stated that he and his investigators spoke with Milliner and that this purported alibi witness refused to be an alibi for defendant on multiple occasions. He specifically testified that when they spoke with Milliner in her apartment, in "no uncertain terms, . . . she said, she did not want to give an alibi to . . . defendant."

Counsel further stated he did not recall any other witnesses that defendant stated would provide an alibi, such as the unidentified woman and his last contact with defendant occurred when defendant refused to meet with him when he visited the jail. At that point, his relationship with defendant had deteriorated to the point that what he described as this "total breakdown in communication", resulting in the court relieving him as defendant's counsel.

During the evidentiary hearing, the recording of Milliner's statement was unable to be played into the record. Defendant's PCR counsel stated, however that he had "listened to it, myself, to clarify . . . and [she was] silent about the time of the murder." PCR counsel further explained as to the "time of the robbery homicide, . . . she doesn't know anything about that. Her statement is

with regard to . . . [t]he use of the credit cards."[2]  The PCR judge was also unsuccessful when attempting to play the recording, but the prosecutor noted, "just so the Court's aware.  The statement was discussed in the police reports; wherein the detectives that took the statement, indicated that Ms. Milliner did not provide [defendant] . . . an alibi for . . . the day of the murder."

After considering the testimony from the evidentiary hearing, the parties' written submissions and oral arguments, the PCR judge denied defendant's petition and issued a written opinion explaining her decision.  She credited the testimony of defendant's counsel to support the conclusion that his performance was not deficient under Strickland.

The PCR judge specifically found defendant's counsel credible because he was "composed and confident in his answers", recalled relevant details of his time as counsel, "especially when he reviewed discovery with him and his investigation into the potential alibi witness, Marshell Milliner."  The judge further explained counsel responded to "all questions asked by him by the State

---

[2]  We have listened and considered the recording in the record in which Milliner identifies herself as defendant's girlfriend.  In that recording, she primarily addresses the use of the victim's credit cards but at no point does she provide an alibi for defendant.

A-4100-23

and defense [and] . . . did not appear to try and deceive the [c]ourt with his responses."

The PCR judge specifically found the "[t]he tape of Marshell Milliner's statement [did] not provide an alibi for defendant" and further noted "even if Marshell Milliner had any additional information to provide, the State and defense counsel . . . indicated that they have exhausted all possible efforts to locate her to testify which have all been unsuccessful."[3]  Finally, she noted that defendant's plea counsel is deceased and thus "no additional information can come from him."  The PCR judge did not, however specifically address defendant's claims about the unidentified woman who allegedly submitted an affidavit attesting to overhearing two men implicating themselves in the homicide.

Our review of an order granting or denying PCR involves consideration of mixed questions of fact and law.  State v. Harris, 181 N.J. 391, 415-16 (2004).  After a court has held an evidentiary hearing, we defer "to a PCR court's factual

---

[3] On this point we note that during the evidentiary hearing, defendant indicated his PCR counsel's investigator was not aware of Milliner's specific apartment number when he attempted to contact her.  The court advised counsel it would await any further information regarding Milliner before issuing its decision. Notwithstanding this opportunity, nothing in the record supports the conclusion Milliner provided defendant with an alibi or that she was willing to testify at the evidentiary hearing.

findings based on its review of live witness testimony[,]" and will uphold findings that are "supported by sufficient credible evidence in the record." State v. Nash, 212 N.J. 518, 540 (2013). However, "we need not defer to a PCR court's interpretation of the law[,]" which we review de novo. Id. at 540-41.

Under the Sixth Amendment of the United States Constitution and Article I, par. 10 of the New Jersey Constitution, a person accused of a crime is guaranteed the effective assistance of legal counsel in his defense. When petitioning for PCR, the defendant must establish, by a preponderance of the credible evidence, that they are entitled to the requested relief. Nash, 212 N.J. 518 at 541. To sustain that burden, the defendant must allege and articulate specific facts that "provide the court with an adequate basis on which to rest its decision." State v. Pennington, 418 N.J. Super. 548, 553 (App. Div. 2011) (quoting State v. Mitchell, 126 N.J. 565, 579 (1992)).

Under the first prong of this test, the defendant must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. There is a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690.

Under the second prong, the defendant must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Ibid. That is, "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "[C]ounsel cannot be deemed ineffective for failing to raise arguments that are ultimately deemed without merit." State v. Roper, 362 N.J. Super. 248, 252 (App. Div. 2003) (citing State v. Worlock, 117 N.J. 596, 625 (1990)). Moreover, "[i]n the PCR context, to obtain relief from a conviction following a plea, 'a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.'" State v. O'Donnell, 435 N.J. Super. 351, 371 (App. Div. 2014) (quoting Padilla v. Kentucky, 559 U.S. 356, 372 (2010)).

Ineffective assistance of counsel may be established "when counsel fails to conduct an adequate pre-trial investigation." State v. Porter, 216 N.J. 343, 352 (2013). "Failure to investigate an alibi defense is a serious deficiency that can result in the reversal of a conviction." Id. at 353. That is so because "few defenses have greater potential for creating reasonable doubt as to a defendant's guilt in the minds of the jury [than an alibi]." Mitchell, 149 N.J. Super. at 262. When counsel chooses "to forgo evidence that could have reinforced

14

[defendant's] alibi . . . the attorney's performance [falls] below the objective standard of reasonableness guaranteed by the United States and the New Jersey Constitutions." State v. Pierre, 223 N.J. 560, 583 (2015).

Where, as in this case, a defendant claims that his or her attorney "inadequately investigated his or her case, [he] must assert the facts that an investigation would have revealed, supported by affidavits or certifications based upon the personal knowledge of the affiant or the person making the certification." State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). "[B]ald assertions" of deficient performance are insufficient to support a PCR application. Ibid., see also Porter, 216 N.J. at 356-57 (reaffirming these principles in evaluating which of a defendant's various PCR claims warranted an evidentiary hearing). In other words, a defendant must identify what the investigation would have revealed and demonstrate the way the evidence probably would have changed the result. Fritz, 105 N.J. at 64-65. "Even a suspicious or questionable affidavit supporting a PCR petition 'must be tested for credibility and cannot be summarily rejected.'" Porter, 216 N.J. at 355 (quoting State v. Allen, 398 N.J. Super. 247, 258 (App. Div. 2008)).

Guided by these principles, we discern no grounds for reversal. With respect to defendant's arguments in his first point, we affirm substantially for

the reasons stated by the PCR judge in her May 31, 2024 written opinion.  As to his contentions in his second point, we similarly find no merit but invoke our original jurisdiction pursuant to Rule 2:10-5 to supplement the court's factual findings and legal conclusions.  We provide the following comments to amplify our reasoning.

In his first argument, defendant again claims that his attorneys were ineffective for failing to communicate adequately with him about his case.  He contends that despite his counsel's duty to him, his counsel "never discussed anything with [defendant]."  Moreover, he asserts that his counsel failed to conduct an adequate investigation as to an alibi witness, Milliner, which prejudiced him during the proceedings.  Defendant also argues that the PCR judge incorrectly determined that Milliner could not provide an alibi because her statement did not discuss the offense at all.

Defendant's arguments are simply not supported by the record.  As the State correctly notes, defendant's counsel's testimony, which the court notably found credible, contradicted his claim that his counsel failed to communicate adequately with him, and his plea counsel is no longer able to testify.  The record nevertheless establishes that defendant's first counsel communicated with him until he was relieved and reviewed discovery with him.  Further, based on the

16

supported credibility-based findings, the judge found defendant's counsel conducted a thorough investigation into defendant's alibi witness and that investigation revealed Milliner's unwillingness to testify on defendant's behalf. Furthermore, the recording in the record does not support defendant's alibi defense.

In his second argument, defendant contends the trial court erred by failing to address that "there was a sworn affidavit by a woman who heard two people in prison bragging about committing this crime, but his attorney did not pursue this lead." He asserts that because the PCR court failed to address this issue, the matter should be remanded and addressed as we directed in Warner II.

We first note that the PCR judge was extremely familiar with the record, based on her presiding over the prior PCR proceedings and the evidentiary hearing. We also observe that in her written decision, before denying defendant's petition based in his failure to satisfy either Strickland's performance or prejudice prongs, she explicitly noted her intention was to "focus on the issue remanded[:] that counsel was ineffective by failing to investigate exculpatory witnesses and adequately communicate with him". Although it is clear the judge was aware of our mandate, and attempted to comply (and did comply with respect to the alibi claim), we agree with defendant that the PCR judge should

have made more precise and specific factual findings and correlated legal conclusions as required by Rule 1:7-4 specifically with respect to defendant's claims that a woman provided an affidavit attesting to overhearing two men implicating themselves in the murder of the victim. We disagree, however, that a third remand is necessary or appropriate under the circumstances.

We see no purpose to be served by remanding for the PCR judge to make additional findings. That is so because we have, when appropriate, exercised original jurisdiction to determine the issues unaddressed directly by the PCR court "to avoid unnecessary further litigation" and when "the record is adequate to terminate the dispute and no further fact[ ]finding" is required and "a remand would be pointless because the issue to be decided is one of law . . . ." Vas v. Roberts, 418 N.J. Super. 509, 523-24 (App. Div. 2011); see also R. 2:10-5. Our exercise of original jurisdiction is also warranted here "as a way to achieve the judicial system's goals of efficiency, finality, and fairness." Price v. Himeji, LLC, 214 N.J. 263, 283 (2013).

We are convinced the record fails to support defendant's arguments. Here, other than defendant's conclusory and unsupported statement, there is nothing in the record to suggest the unnamed affiant actually exists. Notably, defendant's only evidence in support of this argument is found in his petition in

which he alleged his first counsel failed to interview a woman "who was locked up on [another] matter" and who signed an affidavit that stated she "heard [two] black males bragging about doing this homicide". Although he maintained the affidavit was contained in his discovery, no such document was revealed after three remands and an evidentiary hearing. Defendant provided no information other than his self-serving statement in his petition regarding the aforementioned unnamed witness overhearing a supposed hearsay statement.

Based on that bare information, and we note again, no such affidavit exists in the record, defendant's counsel cannot be deemed to have provided ineffective assistance for failing to investigate an unnamed and unidentified witness. Rather, defendant was required to establish by a preponderance of the credible evidence that he was entitled to the relief requested. There simply is no credible evidence that there was an affidavit by a woman who heard two people in prison "bragging" about committing the crime or that any of defendant's counsel failed to pursue this "lead." In fact, defendant's first counsel was correctly found to have properly investigated relevant witnesses and explicitly testified that there was no mention of any other witnesses, and, as noted, defendant's plea counsel is deceased.

19

Defendant has also failed to establish <u>Strickland</u>'s prejudice prong on this record. The affidavit, even assuming it exists and defendant's counsel failed to discover it or investigate the unnamed person further, is at best a hearsay-laden statement and defendant has not established it would have altered defendant's plea decisions and more specifically that but for counsel's deficient performance there exists a reasonable probability but for counsel's purported errors, he would not have pled guilty and instead insisted on going to trial in light of the State's evidence of his guilt as admitted by defendant in his plea colloquy, and the fact his negotiated plea dismissed the most serious charge against him.

To the extent we have not addressed defendant's remaining arguments, we find they lack sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-4100-23